*302 OPINION OF THE COURT
Daniel D. Leddy, Jr., J.
Two men claim to be the father of the subject child, a three-year-old girl. The petitioner in this paternity proceeding alleges that the child was conceived during his adulterous affair with the child’s mother. The mother’s husband, married to and cohabiting with the mother prior to conception and for some 2 Vi years thereafter, contends that he is the child’s father.
Initially this petition named only the child’s mother as respondent. However, the court ordered service on the mother’s husband and designated him as a necessary party. (CPLR 1001 [a]; see also, Matter of Commissioner of Social Servs. v Lazaro F., 99 Misc 2d 408.) A Law Guardian was appointed for the child. (See, Michaella M. M. v Abdel Monem El G., 98 AD2d 464; Matter of Commissioner of Social Servs. v Lazaro F., supra.)
Preliminarily, the court considered the issue of its jurisdiction over this matter and found that jurisdiction lies in Family Court. In Matter of Salvatore S. v Anthony S. (58 AD2d 867 [2d Dept]), the Appellate Division held that where a child’s status is at issue, rather than merely a request for support, the matter is in the nature of a declaratory judgment action and, therefore, properly brought in Supreme Court. However, the rationale of this case seems to have been rejected by the Court of Appeals. In Matter of Sharon GG. v Duane HH. (95 AD2d 466, 467 [3d Dept]), the Appellate Division expressly rejected the contention that a proceeding to determine a child’s status should be brought in Supreme Court as a declaratory judgment instead of Family Court as a paternity proceeding. The Appellate Division order was affirmed by the Court of Appeals "for the reasons stated in the opinion by Justice Howard A. Levine (95 AD2d 466).” (Matter of Sharon GG. v Duane HH., 63 NY2d 859, 862 [1984]; see also, Matter of Cathleen P. v Gary P., 63 NY2d 805.)
Next, the court considered respondent husband’s claim that a third-party stranger to the marriage lacks standing to bring a paternity petition involving a child born during the course of a marriage. The court found this argument unpersuasive. Family Court Act § 522 specifies who may originate paternity proceedings. Included therein is "a person alleging to be the father”. No exception is made for those cases where the mother is married. Under accepted tenets of statutory *303 construction, the court must conclude that if such an exception had been intended by the Legislature, it would have been included in the statute. (McKinney’s Cons Laws of NY, Book 1, Statutes § 74.)
A full plenary hearing was held on April 26 and May 28, 1985. The court has received pretrial and posttrial briefs from counsel. After careful consideration of all papers and proceedings had herein, the court reaches the following findings of fact and conclusions of law.
Respondents, husband and wife, married in 1977. They separated for 1 Vi weeks in July of 1979, but then resumed cohabitation. The respondent mother gave birth to her first child, Erin, on August 24, 1981, and her second child, Michael, on September 3, 1983. She and her husband separated in early 1984; she retains custody of the children, while her husband exercises visitation rights and pays child support pursuant to a separation agreement. Petitioner filed this petition on June 1, 1984, seeking to be declared the father of the child, Erin, to have visitation with her, and to contribute to her support. The respondents, though currently still separated, are joined in opposition to the petition. At the hearing, respondent mother admitted having sexual intercourse with petitioner on various occasions from September 1980 through the first week of December 1980, in Manhattan, Brooklyn and Staten Island. She further conceded that no birth control (condom) was used on one occasion, the date of which she did not specify. Respondent husband had no knowledge of these events or petitioner’s existence.
At the conclusion of the plenary hearing, the Law Guardian opposed the petition on the basis of equitable estoppel. Respondents rely on the estoppel defense alternatively, also contending that even if not estopped, petitioner has not proven his paternity.
Though application of estoppel is a form of equity, and Family Court is not a court of equity (Matter of Lydon v Lydon, 110 Misc 2d 966), the Court of Appeals approved the application of estoppel to a Family Court paternity proceeding in Matter of Sharon GG. v Duane HH. (supra). The Appellate Division had found that a married mother bringing a paternity petition against a third-party "boyfriend”, properly within Family Court jurisdiction, was estopped for having, inter alia, held the child out as the child of her husband and permitting a strong parent-child bond to form. The Court of Appeals affirmed the Appellate Division on the opinion below.
*304 In Hill v Hill (20 AD2d 923) the court affirmed an estoppel against the mother. She was estopped from claiming her husband was not the child’s father where she and her husband had cohabited prior to the child’s conception and for six years after the child’s birth. This was a divorce action wherein the mother sought to win custody by alleging that her husband was not the father. The Appellate Division, Second Department, held (p 924): "Common sense, public policy, reason and the overriding consideration for the welfare of the child will bar a wife from bastardizing her child where, as here, she lived with her husband as his wife during the period of conception and birth of the child and for six years thereafter — all the while concealing from him the adultery to which she now confesses for the sole purpose of securing the child’s custody.”
A Family Court custody award to the mother was reversed in Matter of Boyles v Boyles (95 AD2d 95) even though a blood-grouping test excluded her husband as the child’s father. Based on the blood test, the Family Court had given custody to the mother as opposed to a nonbiological parent, i.e., the husband. The Appellate Division held that because the case presented "extraordinary circumstances”, pursuant to Matter of Bennett v Jeffreys (40 NY2d 543), the best interest of the child must be considered in reaching the custody determination. The mother had affirmatively held her husband out as the child’s father for almost four years. She had "created the opportunity for and effectively encouraged the development of a father-son relationship”. (Matter of Boyles v Boyles, supra, at p 98.) The court found an estoppel against the mother denying her husband’s paternity but remitted the matter to Family Court for inquiry into the child’s best interests.
Equitable estoppel has likewise been applied against a husband who, after a prolonged acquiescence in his legally presumed paternity, denies paternity. In Matter of Montelone v Antia (60 AD2d 603) the respondent in a Family Court support proceeding denied paternity for the first time, some 15 years after he had obtained the parties’ divorce. The Family Court granted his request for a blood-grouping test but was reversed by the Appellate Division on the grounds of equitable estoppel. The court said (p 603), "blood tests should be directed only where the issue of paternity has never been conceded, expressly or implicitly, or actually litigated.”
Clearly, in the case at bar, either the mother or her husband could be estopped, pursuant to case law, from disavowing *305 the husband’s paternity of Erin, because they have previously held the husband out as the child’s father. But estoppel is urged herein against a person claiming rather than denying paternity. Whether the estoppel case law, as discussed above, may be analogized to the facts of the case at bar is apparently a matter of first impression.
The case law differs from the case at bar in a significant way. Estoppel in the case law has been utilized to preclude one who has previously held himself (or her husband) out as a child’s father from later denying paternity, for one’s own advantage and at the expense of the child. Because of the effects of their previous actions, these people were subsequently precluded from retracting their assertions of paternity. The courts have apparently not applied estoppel to a man claiming paternity of a child. Estoppel has only been applied to prevent one from denying paternity after previously claiming it or acquiescing in it.
When asked during the hearing why he did not come forward sooner, petitioner stated that he did not want to interfere with the intact family unit. He also credibly testified that for over two years he believed the child’s mother would leave her husband to be with him. He knew of her second pregnancy by her husband, and he essentially was leaving the timing of the separation up to her. After petitioner learned of her separation, he proposed marriage to the respondent mother and bought an engagement ring for her. When she refused to marry him, he filed this paternity petition. The court finds that on these facts an estoppel should not be employed to prevent petitioner from asserting his claim of paternity.
It should be noted that even if an estoppel were found, unlike other cases, where the welfare of a child is involved, the best interest of the child may mandate that the court proceed on the matter in spite of facts warranting an estoppel. (Matter of Boyles v Boyles, supra; Matter of Sharon GG. v Duane HH., supra [App Div].)
The Law Guardian further argues that public policy requires a putative father to promptly come forward to claim paternity of a child whose mother is married to another man. While this court does not approve of a putative father, cognizant of a child’s existence, sitting back for a prolonged time period before filing a paternity petition, there is no arbitrary cutoff point at which a putative father will be forever barred *306 from asserting his rights. Rather, such a determination must be based on the facts of each case.
To upset an ongoing family unit does strain against public policy. But public policy also favors truth and the facilitation of its ascertainment. It is to be noted that the paternity Statute of Limitations (Family Ct Act § 517 [c]) allows a putative father until the child’s 18th birthday to file a paternity petition. The time period is in no way linked to when the person claiming paternity gained knowledge of the child’s existence. On the facts of this case, the court does not find petitioner’s delay in coming forward so lengthy or so unwarranted as to merit a finding that public policy precludes petitioner from seeking to establish his paternity.
A fundamental precept, acknowledged by all parties, is the presumption that a child born to a married woman is the child of her husband. This is one of the strongest presumptions in the law. (Matter of Findlay, 253 NY 1.) It is "founded on decency, morality and public policy” and "aids in preserving the peace and harmony of family life.” (Schatkin, Disputed Paternity Proceedings § 1.02 [2] [4th rev ed 1984].) So strong is the presumption that separation of the spouses standing alone does not rebut the presumption if there is a "fair basis for the belief that at times they may have come together.” (Matter of Findlay, supra, at p 8.)
Yet, the presumption is rebuttable.[2] (Matter of Hanley v Flanigan, 104 Misc 2d 698.) It may be overcome by clear and convincing evidence. (Matter of Gray v Rose, 32 AD2d 994.) Petitioner carries a "substantial” burden to overcome the presumption. (Matter of Irma N. v Carlos A. F., 46 AD2d 893.)
The presumption arises when the husband’s access to his wife has been shown. (Moy Mee Soo v Leong Yook Yick, 21 AD2d 45, 46, citing Commissioner of Public Welfare v Koehler, 284 NY 260, 263; see also, Cicero v Cicero, 58 AD2d 573.)
Historically, the rigidity with which the presumption of legitimacy is applied has lessened:
"At one time access was established conclusively by proof of the barest possibility of its existence.” (Moy Mee Soo v Leong Yook Yick, supra, at p 46.)
"A formula so inexorable has yielded with the years to one *307 more natural and supple.” (Matter of Findlay, supra, at p 7; see also, Richardson, Evidence § 59 [10th ed].)
In the case at bar, the presumption of legitimacy is extant, because the husband’s access has been shown. Respondent mother testified credibly that she engaged in sexual relations with her husband regularly while cohabiting. While respondent husband failed to testify as to sexual intercourse during the period of conception, petitioner did not contend that respondent husband had anything other than a normal relationship while cohabiting with his wife.
Proof of adultery is insufficient to rebut the presumption. (Matter of Gray v Rose, supra; Hill v Hill, 20 AD2d 923, supra.) In Matter of Irma N. v Carlos A. F. (supra), reversing the Family Court, the court held that even though a meretricious relationship may have been proved, the presumption of legitimacy was not overcome because the husband’s access had not been negated (citing Matter of Mannain v Lay, 33 AD2d 1024, affd 27 NY2d 690). The parties had been separated four years, but the husband had come to the wife’s apartment regularly to pick up the children for visitation. It should be noted, though, that in Irma N. petitioner mother was the sole witness, and her testimony lacked any corroboration. What may be deduced from these cases is that where there has been access by the husband and another man, without more, paternity will be found in the husband, i.e., the presumption of legitimacy becomes conclusive.
In addition to proving the husband’s nonaccess, there are at least two other ways in which the presumption of legitimacy may be overcome: proof of the husband’s impotency or proof by competent blood testing that husband is excluded as the biological father. (Matter of Hanley v Flanigan, supra; Richardson, Evidence § 59 [10th ed].) There is no evidence that respondent husband was impotent or sterile at the time of Erin’s conception or any other time.
The respondent husband refused to voluntarily submit to an HLA test, and he was not so ordered by the court. See Matter of Sharon GG. v Duane HH. (supra) wherein the Court of Appeals stated that it did not consider or decide whether a husband may ever be compelled by his wife to submit to a blood test or by the court based on the best interest of the child. See also, Matter of Montelone v Antia (supra) wherein the court said a man who previously conceded paternity should not be ordered to submit to blood tests.
*308 Petitioner, respondent mother and the child submitted to blood tests including the human leucocyte antigen (HLA) test. (Family Ct Act § 532.) These tests were ordered on consent of the petitioner and respondent mother for herself and on behalf of the child. The results of the tests were admitted into evidence on the request of the petitioner and over the objection of the respondents. The Law Guardian for the child did not object to admission of these results. On the HLA test petitioner scored 99.82%. Such a result is characterized by the administering laboratory as paternity "practically proved”.
In Dawn B. v Kevin D. (96 AD2d 922) the respondent, third-party putative father, opposed the petition brought against him by the child’s mother. He had scored 99.8% on the HLA test, "practically proved”. Both petitioner mother and her husband, who had married after conception but before the birth of the child, testified that they believed respondent to be the child’s father. Petitioner had been having sexual relations with both men at the time of conception. Based on the presumption of legitimacy, the Family Court had dismissed the petition. Because petitioner mother had failed to present evidence of nonaccess or nonpaternity of the husband, the Family Court found the presumption of legitimacy had not been rebutted. The husband allegedly possessed HLA test results excluding him as the father. In reversing the Family Court, the Appellate Division said (p 923), "A blood test which excludes the husband’s paternity is sufficient to rebut the presumption”. The case was remitted to Family Court for admission of this evidence, even though the petitioner had failed to have the evidence admitted, because a new determination utilizing this evidence was felt to be in the child’s best interest and the interest of justice.
In Michaella M. M. v Abdel Monem El G. (98 AD2d 464, supra) the court found utilization of the highly accurate HLA test to limit litigation and rebut the presumption of legitimacy consistent with public policy. But in that case, unlike ours, the blood test was done on the husband, and both spouses agreed that the husband was not in the country at the approximate time of conception.
Since we have no HLA test on the husband in the case at bar, the court is faced with another question of first impression: are the HLA test results on petitioner, mother and child, along with the other evidence, to wit, petitioner’s sexual relations with the mother at the time of conception, sufficient to rebut the presumption of legitimacy?
*309 The presumption of legitimacy arose in an era when the truth could not be scientifically determined as to which of two men having access to the mother was the father of a child. So, for public policy reasons, the benefit of the doubt was given to the husband. It is posited that the technological advances in blood testing have undermined some of the necessity for the presumption of legitimacy.[3]
In Matter of Findlay (supra, at p 8) Chief Judge Cardozo made the oft-quoted statement that "the presumption will not fail unless common sense and reason are outraged by a holding that it abides.” However, he went on to say (p 8): "The presumption does not consecrate as truth the extravagantly improbable, which may be one, for ends juridical, with the indubitably false”.
When such a highly accurate test as the HLA shows "practically proven” that petitioner is the child’s father, common sense and reason are outraged by the presumption of legitimacy. This court finds the HLA score such compelling evidence, together with the corroborating testimony of both petitioner and respondent mother as to their sexual relations, as to overcome the presumption of legitimacy in this case.
The remaining issue addressed by the parties and considered by the court is whether a negative inference may be drawn against the respondent husband for his refusal to voluntarily submit to an HLA test. .
Family Court Act § 532 (a) authorizes the court to order an "alleged father” to submit to blood testing, including the HLA test unless excluded by another blood genetic marker test. Courts have drawn negative inferences upon refusal of alleged fathers to take an ordered HLA test. (See, e.g., Matter of Molly M. v Edwin F., 118 Misc 2d 768.) In Matter of Meyer v McKie (117 Misc 2d 851) the court found a Family Court Act § 532 order tantamount to a disclosure order and under CPLR 3126 deemed issues resolved where disclosure was refused.
Where, as here, the court did not order respondent to submit to an HLA test and he would not voluntarily submit, the court, in Moon v Crawson (109 Misc 2d 902) refused to draw a negative inference. However, this holding does not *310 appear consistent with Matter of Commissioner of Social Servs. v Philip De G. (59 NY2d 137).
The Court of Appeals held that in a paternity proceeding the court may draw the strongest possible inference, permitted by the opposing evidence in the record, against a respondent who exercises his statutory right not to testify (Family Ct Act § 531; Matter of Commissioner of Social Servs. v Philip De G., supra). The court relied on Noce v Kaufman (2 NY2d 347, 353) which held that "where an adversary withholds evidence in his possession or control that would be likely to support his version of the case, the strongest inferences may be drawn against him which the opposing evidence in the record permits”.
The paternity cases above are distinguished from the case at bar in that respondent here, rather than denying paternity, is defending it. Yet, by refusing to take the HLA he is effectively withholding evidence solely in his possession and control. The respondent husband did testify, but his refusal to submit to the HLA is tantamount to refusal to testify on that issue and, therefore, under Philip De G. (supra) the court may draw the strongest inference against him on that issue permitted by opposing evidence in the record. The HLA on petitioner, mother and child, admitted into evidence, indicated the likelihood of petitioner’s paternity as "practically proved”. Therefore, the inference against respondent husband is that the petitioner is the father and not the husband, since only one man can be the father.
In Department of Social Servs. (Janet R.) v Kenneth S. N. (120 Misc 2d 453) the court found paternity established even though there had been proof of access by two men during the period of conception. This case differs from ours in that the child was born out of wedlock, but the reality is the same: a woman can have sexual intercourse with more than one man during the fertile period, yet only one of them can be the biological father of a child.
The court does find it appropriate to employ a negative inference against respondent husband. However, based on all other credible, relevant evidence had herein, even without the negative inference, the court finds petitioner’s paternity has been established by clear and convincing evidence. Accordingly, the court herewith enters this order of filiation.
The respondent husband’s obvious love for Erin made this an especially difficult decision for the court. However, he is *311 Erin’s de facto psychological father, and under Matter of Bennett v Jeffreys (40 NY2d 543, supra) may be entitled to retain visitation rights with the child if he should so desire and petition therefor.
This matter is set down for a hearing on October 4, 1985 on the remaining issues in the petition, support and visitation by petitioner. To aid the court in fashioning an appropriate order of visitation, all parties and the child are to be evaluated by the Family Court Services Mental Health Clinic with a report to the court.

. However, it is not equally rebuttable in all jurisdictions. In California, where the presumption is statutory, unless the husband is impotent, legitimacy may only be rebutted by the State, or the husband or wife or their descendants. (Schatkin, op cit.)

. It could also be posited that application of the presumption of legitimacy must now be tempered by the advent of the rights of putative fathers delineated in Stanley v Illinois (405 US 645) and its progeny, albeit these cases involve children born out of wedlock.