[No. 52236-7. En Banc. June 11, 1987.]

SHAWN MCDANIELS, *Appellant,* v. GARY CARLSON, *Respondent.*

*Kenneth A. Lee,* for appellant.

*Mark T. Patterson,* for respondent.

*Sullivan, Graafstra & Twisselman,* by *William R. Sullivan,* as guardian ad litem.

GOODLOE, J.—Shawn McDaniels appeals from the trial court's dismissal of his action to establish paternity of a child. The trial court held that appellant McDaniels was collaterally estopped from bringing the action because he had resided with the child's mother during the pendency of a dissolution action at which time respondent Gary Carlson

was declared to be the father and ordered to pay child support. We reverse.

## FACTS OF THE CASE

Respondent and Lisa Carlson were married on May 9, 1981. In June 1981, Lisa met appellant at the company where they both worked, and a 5–month romantic relationship ensued.

Lisa gave birth to Wendy Lynne Carlson on June 29, 1982. Appellant alleges that at the time of pregnancy, he and Lisa determined they had been together three times in a 5–day period surrounding the presumed date of conception, September 5, 1981. He further alleges that Lisa represented to him and others that he was Wendy's father. Respondent and Lisa both deny these allegations and contend that respondent is the natural father of the child.

Respondent and Lisa separated during April or May of 1983. At some time thereafter, but not later than September 1983, Lisa began living with Shawn. Appellant alleges that throughout most of the period he was living with Lisa, he took care of Wendy on a full–time basis while Lisa worked. Meanwhile, respondent exercised visitation rights. It appears that both men have developed strong bonds with the child.

Lisa filed for dissolution on June 3, 1983, claiming Wendy to be "the issue" of the marriage and seeking custody and child support. No question as to Wendy's paternity was raised during the dissolution proceedings. Appellant claims that he "reluctantly agreed" with Lisa not to come forward on the paternity issue, because Lisa "did not want to hurt Gary." Clerk's Papers, at 114–15. The dissolution decree, issued February 17, 1984, found Wendy to be the minor child of Lisa and respondent, awarded custody to Lisa with liberal visitation and consultation rights to respondent, and ordered respondent to pay $300 per month in child support. Appellant alleges that only $400 support money was actually received.

Lisa severed her relationship with appellant on February

24, 1985, and approximately 2 months later moved back in with respondent. Respondent and Lisa were remarried on August 21, 1985.

Appellant filed this paternity action in Snohomish County Superior Court on March 20, 1985, seeking to establish himself as Wendy's father and obtain visitation rights. Respondent moved to dismiss on grounds of collateral estoppel contending that appellant had brought this suit for the sole purpose of continuing his relationship with Lisa. The court commissioner denied respondent's motion to dismiss and ordered that blood tests be taken.

The trial judge reversed the commissioner's order. The trial judge held that because appellant was in privity with Lisa during the dissolution proceeding which established respondent as the father, appellant was collaterally estopped from bringing suit. He subsequently vacated this ruling in light of this court's recent holding in *State v. Santos,* 104 Wn.2d 142, 702 P.2d 1179 (1985) that a child's *interests* must be separately represented before there can be a binding paternity determination. However, upon motion for reconsideration, the trial judge decided that *Santos* was inapplicable. The judge then reversed the order to vacate and reinstated his original ruling that appellant was estopped. This court granted direct review and ordered the appointment of a guardian ad litem to represent the interests of the child.

The guardian ad litem's report, filed September 9, 1986, states that both appellant and respondent have adequate parenting ability, genuinely love Wendy, and maintain an excellent relationship with her. Wendy speaks of both men as her father and has at various times addressed then as "daddy Gary" and "daddy Shawn". Other relatives of her family are well acquainted with the circumstances of this case. The guardian recommends that paternity be determined to resolve the invariable confusion and tension in Wendy's life and, regardless of the paternity determination, that both appellant and respondent be awarded rights of visitation "because it is clearly in Wendy's best interest to

preserve her relationships with each [of them]." Report of Guardian ad Litem, at 7–8.

Since the initiation of these proceedings, Lisa and respondent have again separated and have copetitioned for dissolution. As of March 1986, Lisa, together with Wendy and a second daughter Rebecca (by respondent), has been living with appellant.

## ISSUES

We address two issues:

1. Did the trial court err in dismissing appellant's paternity action on the basis of estoppel?

2. What role do public policy and the best interests of the child play in the allowance of paternity actions brought under the Uniform Parentage Act (UPA), RCW 26.26?

## DECISION
### I
### Estoppel

Collateral estoppel promotes the policy of ending disputes by preventing the relitigation of an issue or determinative fact after the party estopped has had a full and fair opportunity to present a case. *In re Marriage of Mudgett*, 41 Wn. App. 337, 342, 704 P.2d 169 (1985); *Seattle–First Nat'l Bank v. Cannon*, 26 Wn. App. 922, 927, 615 P.2d 1316 (1980). In order for collateral estoppel to apply, the following questions must be answered affirmatively:

> (1) Was the issue decided in the prior adjudication identical with the one presented in the action in question? (2) Was there a final judgment on the merits? (3) Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication? (4) Will the application of the doctrine not work an injustice on the party against whom the doctrine is to be applied?

*Rains v. State*, 100 Wn.2d 660, 665, 674 P.2d 165 (1983); *Lucas v. Velikanje*, 2 Wn. App. 888, 894, 471 P.2d 103 (1970). The burden of proof is on the party asserting estoppel. *Alaska Marine Trucking v. Carnation Co.*, 30

Wn. App. 144, 633 P.2d 105 (1981), *cert. denied,* 456 U.S. 964 (1982).

Appellant argues that the above four elements of estoppel have not been met. Specifically, he argues there is neither identity of issues nor finality of judgment because paternity was never actually "litigated" at the dissolution proceeding; it was simply assumed. Privity is not established, appellant claims, because persons in privity must be on equal footing in all respects, *Duffy v. Blake,* 91 Wash. 140, 157 P. 480 (1916); the fact that he and Lisa were living together is not enough to meet privity requirements. Finally, appellant argues that application of collateral estoppel will work an injustice by depriving him of a fundamental right to assert and prove his paternity of a child. *See, e.g., Little v. Streater,* 452 U.S. 1, 13, 68 L. Ed. 2d 627, 101 S. Ct. 2202 (1981); *Stanley v. Illinois,* 405 U.S. 645, 651, 31 L. Ed. 2d 551, 92 S. Ct. 1208 (1972).

Respondent argues that the four elements of collateral estoppel are met. Respondent claims paternity *was* an issue in the dissolution action, although not expressly litigated, because questions of support and custody were involved. The dividing up of parental rights and duties in a dissolution proceeding by implication necessitates a paternity determination; "identity of issues" and finality requirements are therefore satisfied. Further, respondent argues that privity denotes a mutual or successive relationship to the same right or property. *See Hackler v. Hackler,* 37 Wn. App. 791, 794, 683 P.2d 241 (1984). Respondent cites recent cases holding that cohabitants acquire certain mutual rights in each other's property accumulations not unlike the community property rights of married persons. *See In re Marriage of Lindsey,* 101 Wn.2d 299, 678 P.2d 328 (1984); *Warden v. Warden,* 36 Wn. App. 693, 698, 676 P.2d 1037 (1984). By living together, respondent contends, appellant and Lisa possessed mutual rights in any received child support and consequently were in privity as to this dissolution proceeding. Finally, respondent argues there is no injustice since appellant had a full and fair opportunity under CR 24

to intervene in the dissolution, an opportunity he voluntarily relinquished after discussion with Lisa. Respondent concludes that any possible injustice to Shawn from not being able to declare his paternity must be balanced against the injustice caused to Wendy by interfering with the stability of her world.

Appellant's arguments are persuasive. We hold that neither identity of issues nor privity has been established in this case.

■ ■ Collateral estoppel requires that the issue decided in the prior adjudication is identical with the one at hand. *Luisi Truck Lines, Inc. v. State Utils. & Transp. Comm'n,* 72 Wn.2d 887, 894, 435 P.2d 654 (1967). Where an issue arises in two entirely different contexts, this requirement is not met. *Luisi,* at 895. In addition, collateral estoppel precludes only those issues that have actually been litigated and determined; it "does not operate as a bar to matters which could have . . . been raised [in prior litigation] but were not." *Davis v. Nielson,* 9 Wn. App. 864, 874, 515 P.2d 995 (1973); *accord, Fluke Capital & Management Servs. Co. v. Richmond,* 106 Wn.2d 614, 620, 724 P.2d 356 (1986).[1] Where, for example, an earlier judgment has been entered upon stipulated findings of fact and embodying a settlement of the parties, appellate courts have refused to apply collateral estoppel against persons not actually participating in the stipulations. Trautman, *Claim and Issue Preclusion in Civil Litigation in Washington,* 60 Wash. L. Rev. 805, 833 (1985); *see Yakima Cement Prods. Co. v. Great Am. Ins. Co.,* 14 Wn. App. 557, 562, 544 P.2d 763 (1975); *Marquardt v. Federal Old Line Ins. Co.,* 33 Wn. App. 685, 658 P.2d 20 (1983). Finally, collateral estoppel extends only to "ultimate facts", *i.e.,* those facts directly at issue in the first controversy upon which the claim rests, and not to "evidentiary facts" which are merely collateral to the original claim. Trautman, at 833–34; *Seattle–First*

---

[1]Collateral estoppel is thus distinguished from res judicata. *See Schoeman v. New York Life Ins. Co.,* 106 Wn.2d 855, 861, 726 P.2d 1 (1986).

*Nat'l Bank v. Kawachi,* 91 Wn.2d 223, 588 P.2d 725 (1978); *Beagles v. Seattle–First Nat'l Bank,* 25 Wn. App. 925, 931, 610 P.2d 962 (1980).

The issue of paternity was never actually litigated in the dissolution proceeding; it was merely presumed upon the parties' stipulations. Moreover, paternity was only collateral to the real issues in controversy: custody, support, and visitation rights. Therefore, there was no identity of issues between the paternity finding in the prior dissolution case and the present cause of action.

■ The privity requirement in collateral estoppel is based on the principle that "a stranger's rights cannot be determined in his absence from the controversy." *Owens v. Kuro,* 56 Wn.2d 564, 568, 354 P.2d 696 (1960). Respondent is correct in stating that privity denotes a "mutual or successive relationship to the same right or property." *See Owens,* at 568. However, respondent's argument that appellant was in privity with Lisa by virtue of their living together is tenuous at best. First, it is unthinkable that appellant should have rights, as a cohabitant, to support money received by Lisa on Wendy's behalf. The support money paid to Lisa is not her property, but is to be expended for the benefit of her child. *See Roberts v. Roberts,* 69 Wn.2d 863, 869, 420 P.2d 864 (1966). Moreover, *paternity,* not support money, is the right at stake. Clearly, Lisa's and appellant's interest in paternity rights were distinct. Lisa did not give up *her* rights to be known as Wendy's mother by choosing to accept support money from respondent. It would be unjust to hold Shawn to Lisa's declarations of paternity, where Lisa had very little to lose, and Shawn everything, from such declarations.

In recent years, Washington courts have created some exceptions to the strict privity requirement in collateral estoppel. These have always been narrowly construed. For example, in *Kyreacos v. Smith,* 89 Wn.2d 425, 427–28, 572 P.2d 723 (1977), this court held that a police detective's prior conviction for first degree murder precluded the victim's wife from suing the police department on a theory of

respondeat superior, even though the wife was neither a party nor in privity with a party in the criminal case, since relitigation of the character of the murder act would be an "absurd result". However, the court took pains to point out that this was "a most unique case which must be confined to its peculiar facts". *Kyreacos,* at 428. *Kyreacos* is also distinguishable in that the plaintiff was not left remediless (she had alleged three alternative causes of action), and therefore no injustice would result. *See Kyreacos,* at 426–29. Here, appellant would be left without a remedy if estopped.

Respondent relies on a Court of Appeals case, *Hackler v. Hackler, supra,* which held that "[o]ne who was a witness in an action, fully acquainted with its character and object and interested in its results, is estopped by the judgment as fully as if he had been a party." *Hackler,* at 795 (citing *Bacon v. Gardner,* 38 Wn.2d 299, 229 P.2d 523 (1951)). In *Hackler,* the plaintiff had testified on behalf of his son in a dissolution proceeding that he had sold his son and daughter–in–law a home. He failed to reveal that the house had been resold back to himself. After the dissolution decree awarded the home to the daughter–in–law, plaintiff then brought an action to quiet title. In holding that plaintiff was estopped from relitigating the ownership of the home, the court reasoned that by testifying plaintiff had taken an active role in the controversy and was clearly interested in its results. *Hackler,* at 795.

In the present case, appellant did not testify as a witness or participate whatsoever in the dissolution case. Furthermore, the facts do not establish that appellant was fully aware of the character of the dissolution proceeding, *i.e.,* that it would result in a conclusive paternity determination. Thus, the limited exception suggested by *Hackler* does not apply. *See, e.g., State ex rel. Lidral v. Superior Court,* 198 Wash. 610, 89 P.2d 501 (1939) (one must be a party or in privity with a party to be bound by collateral estoppel; merely being aware of certain proceedings is not enough).

Finally, *In re Burley,* 33 Wn. App. 629, 658 P.2d 8 (1983)

suggests that our courts have not been willing to abandon strict privity requirements in the context of paternity cases. *Burley* held that the fact that the State had previously dismissed its own paternity suit would not operate as *res judicata* to bar the mother and child from bringing a similar action. *Burley,* at 640.

■ Although not addressed by the trial judge, respondent has also raised issues of waiver and equitable estoppel. The doctrine of waiver provides that "[o]nce a party has relinquished a known right or advantage, he cannot reclaim it without the consent of his adversary." *Bowman v. Webster,* 44 Wn.2d 667, 670, 269 P.2d 960 (1954). The evidence does not establish that appellant knew he was relinquishing his rights by not coming forward during the dissolution action. He was not a party to the action and not represented by counsel at the time. Thus, the doctrine of waiver does not apply.

■ The elements of equitable estoppel are:

(1) an admission, statement, or act inconsistent with the claim afterwards asserted, (2) action by the other party on the faith of such admission, statement, or act, and (3) injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement, or act.

*Harbor Air Serv., Inc. v. Board of Tax Appeals,* 88 Wn.2d 359, 366–67, 560 P.2d 1145 (1977). Estoppel can arise through silence, as well as statements, when one has a duty to speak out. *Kessinger v. Anderson,* 31 Wn.2d 157, 169, 196 P.2d 289 (1948) (quoting 21 C.J. *Estoppel* § 116, at 1113 (1920)). However, no matter how communicated, the assertion on which estoppel is based must induce *reliance* by the other party. *In re Estate of Boston,* 80 Wn.2d 70, 76, 491 P.2d 1033 (1971).

Respondent argues that he relied to his detriment on appellant's "silent affirmation of his parentage". Brief of Respondent, at 16. Respondent claims that he has developed a bond with Wendy and paid support money (although it is alleged that only $400 has been received) on

belief that he is her true father. Yet, respondent does not establish that the requisite reliance occurred. He could not have "relied" on Shawn's silence during the dissolution action because he admittedly had no idea that he might not be Wendy's father. Moreover, even if respondent had possessed some doubts, he probably would have acted no differently. Respondent has eagerly continued to pursue his relationship with Wendy, despite the present uncertainty of her parentage. As a presumed father, he would probably have been ordered to pay temporary support even if appellant had come forward in the dissolution proceeding. *See* RCW 26.26.040, .137. In short, respondent has demonstrated no change in behavior resulting from appellant's failure to raise the paternity issue during the dissolution. The elements of equitable estoppel are not satisfied.

## II
## Public Policy Considerations

Appellant has also argued that even if the elements of ordinary estoppel are present, it is in Wendy Carlson's best interest to allow this paternity action. *See Ettore I. v. Angela D.,* 129 Misc. 2d 301, 305, 492 N.Y.S.2d 1013 (Fam. Ct. 1985); *see also In re Marriage of Studebaker,* 36 Wn. App. 815, 818, 677 P.2d 789 (1984). According to appellant, a child's "compelling interest" in the ascertainment of its parentage, *see Little v. Streater,* 452 U.S. 1, 13, 68 L. Ed. 2d 627, 101 S. Ct. 2202 (1981) and *State v. Santos,* 104 Wn.2d 142, 148, 702 P.2d 1179 (1985), prevents a court from dismissing a paternity action, at least without first considering the effect on the rights of the child. Moreover, appellant argues, public policy favors accurate paternity determinations even to the detriment of family unity and harmony. Because we find no estoppel, we do not need to address appellant's claims. Nevertheless, we believe it would be helpful to clarify precisely what role public policy and the "best interests of the child" standard play in paternity actions brought under the UPA.

Appellant is correct that in actions relating to the care

and welfare of minor children the best interests of the child control. *See In re Aschauer,* 93 Wn.2d 689, 695, 611 P.2d 1245 (1980); *In re Becker,* 87 Wn.2d 470, 553 P.2d 1339 (1976); *In re Dombrowski,* 41 Wn. App. 753, 756–57, 705 P.2d 1218 (1985). Yet appellant errs in assuming that *anyone* can assert those rights by stepping into the shoes of a *minor* child.

Child development experts widely stress the importance of stability and predictability in parent/child relationships, even where the parent figure is not the natural parent. *See, e.g.,* J. Goldstein, A. Freud & A. Solnit, *Beyond the Best Interests of the Child* (1979); Watson, *The Children of Armageddon: Problems of Custody Following Divorce,* 21 Syracuse L. Rev. 55 (1969–1970); *Alternatives to "Parental Right" in Child Custody Disputes Involving Third Parties,* 73 Yale L.J. 151 (1963); *see generally* E. Erickson, *Childhood and Society* (1963). Our courts and Legislature have echoed these concerns. *Aschauer,* at 695; *In re Marriage of Allen,* 28 Wn. App. 637, 644, 626 P.2d 16 (1981); *see also* RCW 26.09.280 (modification of custody standard). A paternity suit, by its very nature, threatens the stability of the child's world. We are concerned that the best interests of the child standard, too broadly interpreted, could become a blanket license for any person to disrupt long-fostered family relationships by claiming to be the parent of a child. It may be true that a child's interests are generally served by accurate, as opposed to inaccurate or stipulated, paternity determinations. *See Santos,* at 148. However, it is possible that in some circumstances a child's interests will be even better served by no paternity determination at all. *See, e.g.,* RCW 26.33.330 (mandating permanent sealing of adoption files except for good cause shown). The best interests of the child standard does not entitle a court to presume that paternity determination is *automatically* in the child's best interest. Therefore, absent a showing that such determination is in fact within the child's best interests, this standard cannot be invoked on behalf of someone other than the child.

The case law recognizes three rights of particular importance under the UPA—the rights of the child, parent, and State. *Santos,* at 148 & n.3; *Burley,* at 640. The child has an interest not only in obtaining support, but also in inheritance rights, family bonds, and accurate identification of his or her parents. *Santos,* at 147–48; *see also Hayward v. Hansen,* 97 Wn.2d 614, 617, 647 P.2d 1030 (1982). The putative parent has an interest in family bonds and in not being erroneously required to pay child support. *Santos,* at 146–48; *Streater,* at 13. The parent also has a recognized right to the companionship, care, and custody of his or her minor children of which he or she cannot be deprived without due process of law. *Stanley v. Illinois,* 405 U.S. 645, 650, 31 L. Ed. 2d 551, 92 S. Ct. 1208 (1972). Finally, the State has an interest in protecting the public from the burden of supporting children born out of wedlock and in accurately determining who should pay support. *Santos,* at 148–50; *Streater,* at 14. Where these rights come into conflict, the rights of the child should prevail. *See, e.g., Santos,* at 148–49 (State's temptation to accept stipulation of paternity as a means of solving support problem must give way to child's interest in accurate determination of parentage); *State v. Meacham,* 93 Wn.2d 735, 741, 612 P.2d 795 (1980) (interests of child and State in paternity action prevail over privacy rights of putative parent in regards to compelled blood tests); *see also In re Becker,* 87 Wn.2d 470, 473, 553 P.2d 1339 (1976) (parent's right to custody of child must yield to child's interests when the two are in conflict); *see generally Paternity Determinations in Washington: Balancing the Interests of All Parties,* 8 U. Puget Sound L. Rev. 653, 660 (1985). As this court has observed: "Despite the numerous burdens and benefits of being a father . . . it is the child who has the most at stake in a paternity proceeding." *Santos,* at 143.

■ We contemplate that in some circumstances the rights of the child will be better served by maintaining a stable family relationship than by allowing a paternity action. Where someone outside the family files a paternity

action, the trial judge should consider the impact upon the child in deciding whether the action may proceed. This determination must depend on the particular circumstances of the case and needs of the implicated child. *Ettore I.,* at 305–06.

The UPA accommodates our concern that the interests of the child be accorded sufficient weight. The UPA in part provides:

> A child, a child's natural mother, a man alleged or alleging himself to be the father, a child's guardian, a child's personal representative, the state of Washington, or any interested party may bring an action at any time for the purpose of declaring the existence or nonexistence of the father and child relationship.

RCW 26.26.060(1)(a). The UPA further requires that the child be made a party to the action and represented by a guardian ad litem. RCW 26.26.090(1). Failure to make the child a party divests the court of jurisdiction to decide this issue and voids any decision rendered. *State v. Santos, supra; Hayward v. Hansen, supra; Miller v. Sybouts,* 97 Wn.2d 445, 645 P.2d 1082 (1982). In short, the statute's requirement that a guardian ad litem be appointed *before* a court can act ensures that due consideration will be paid to the rights of a child. Yet, we must stress, the trial judge is not bound by the guardian ad litem's recommendations. Rather, the court must balance the interests of all parties involved, while keeping in mind that the child's interests are paramount.

The criteria for determining the best interests of the child are varied and highly dependent on the facts and circumstances of the case at hand. *Aschauer,* at 695. Yet continuity of established relationships is a key consideration. *Aschauer,* at 695; *Allen,* at 648. In determining whether it is in the child's best interests to allow a paternity action by one outside the present family, the trial court should consider the stability of the present home environment, the existence or lack thereof of an ongoing family unit, the extent to which uncertainty of parentage already exists in

the child's mind, and any other factors which may be relevant in assessing the potential benefit or detriment to the child. In the present case the guardian ad litem advocated, and the record supports, that it is in Wendy Carlson's best interest for this paternity action to proceed. The integrity of the marriage between respondent and Lisa Carlson has long dissolved. The stability of the family is shattered and great uncertainty prevails as to who Wendy's true father is. The only way to put an end to the speculation, doubt, and questions that will continue to plague Wendy and those who will substantially interact with her in the future is to allow this paternity action.

In sum, we do not dispute the language appellant cites from *Ettore I.* that "where the welfare of a child is involved, the best interest of the child *may* mandate that the court proceed on the matter in spite of facts warranting an estoppel." (Italics ours.) *Ettore I.,* at 305. However, we reiterate, the mere filing of a paternity action does not automatically imply that the action is in the child's best interest. A court must reach this conclusion independently based on the facts in the record and the recommendations of the guardian ad litem appointed to represent the interests of the child.

In light of our disposition of this case, we find it unnecessary to address appellant's other challenges to the trial court's prehearing dismissal. We hold that appellant is not estopped from bringing an action to establish his paternity of Wendy Carlson and that it is in Wendy Carlson's best interest to have her biological father identified. Also, in light of Wendy's strong relationship with both appellant and respondent and the genuineness of their affection, we accept the recommendation of the guardian ad litem that it would be in Wendy's best interest to preserve her relationship with each. Regardless of the outcome of the paternity determination, either party will be entitled to petition the trial court for reasonable visitation rights. *See Ettore I. v. Angela D.,* 129 Misc. 2d 301, 310–11, 492 N.Y.S.2d 1013 (Fam. Ct. 1985); *In re Dombrowski,* 41 Wn. App. 753, 755,

705 P.2d 1218 (1985); RCW 26.09.240. We reverse the trial court and remand for reinstatement of appellant's paternity action.

PEARSON, C.J., and UTTER, DOLLIVER, CALLOW, and DUR-HAM, JJ., concur.

DORE, J., concurs in the result.

ANDERSEN, J. (concurring in the result)—In this case, the child's mother alternatively cohabited with two men during the period of time when her child could have been conceived, with the result being that either man could be the biological father of the child. Under these circumstances, I believe that the best interests of the child, and of society, would be served by establishing the fact of paternity.

Accordingly, I concur with the result of the majority opinion and would reverse and remand.

BRACHTENBACH, J., concurs with ANDERSEN, J.