**JOHN DOE**, Petitioner–Appellant, v. **JANE ROE**, Defendant–Appellee

NO. 16059

(FC–P NO. 92–0039)

SEPTEMBER 28, 1993

BURNS, C.J., HEEN, AND WATANABE, JJ.

OPINION OF THE COURT BY BURNS, C.J.

John Doe (John) appeals the family court's March 6, 1992 order *sua sponte* dismissing his January 14, 1992 petition seeking the family court's decree that he is not the natural father of Jane Roe's (Jane) daughter (Daughter). We vacate the March 6, 1992 order and remand for further proceedings.

John and Jane were married on November 23, 1990. Four months later, on March 26, 1991, Jane gave birth to Daughter.

In a related Texas case, Jane submitted her August 16, 1991 affidavit in which she stated in relevant part as follows: "I specifically deny that [John Doe] is the biological father of [Daughter]. The true biological father of [Daughter] is [Richard Zoe], to the best of my knowledge and belief."

In a related Hawai'i family court case, Jane filed a complaint for divorce on August 22, 1991. In his answer, John denied his paternity of Daughter. On September 17, 1991, the family court ordered John to pay child support of $200 per month. On March 6, 1992, John filed a motion for an order requiring DNA testing of John, Jane, and Daughter. Three days later, a guardian ad item (GAL) was appointed to protect Daughter's interests. In his March 19, 1992 memorandum in opposition to John's March 6, 1992 motion, the GAL opposed the motion "on the ground that such tests is [sic] not in [Daughter's] best interest because [John] is requesting the DNA tests solely to disestablish paternity." On March 30, 1992, the family court denied John's March 6, 1992 motion.

The instant paternity case commenced when John filed a petition on January 14, 1992 seeking the family court's decree that he is not Daughter's father. On March 6, 1992, the family court entered an order *sua sponte* dismissing John's petition without prejudice.

The transcript of the January 29, 1992 family court hearing states in relevant part as follows:

> THE COURT: ... But my problem is this, [John] has filed a petition to disestablish paternity?

> * * *

> THE COURT: ... The petition has to be a petition to establish. He can't file under Uniform Parent — the purpose of the Uniform Parentage Act is not to take away fathers from kids, but to give them parents.

> * * *

The transcript of the March 6, 1992 family court hearing states in relevant part as follows:

THE COURT: . . . [M]y interpretation of the statute is I don't think the court has jurisdiction. . . .

* * *

This looks like a disestablishment of paternity action.

* * *

THE COURT: And that's why I have problems with that.

* * *

THE COURT: . . . [A]ccording to the statute I don't think I have any jurisdiction at this point in time — or authority I should say basically — to — entertain this petition.

So, the Court sua sponte then will dismiss this petition according to [Hawai'i Revised Statutes § 584–6(a)].

Hawai'i Revised Statutes (HRS) § 584–4(a)(1) (1985) states in relevant part that "[a] man is presumed to be the natural father of a child if: (1) He and the child's natural mother are or have been married to each other and the child is born during the marriage[.]"

HRS § 584–6(a) (Supp. 1992), which is part of Hawai'i's Uniform Parentage Act, states in relevant part as follows: "[A] presumed father as defined in section 584–4, . . . may bring an action for the purpose of declaring the existence or nonexistence of the father and child relationship[.]" In other words, HRS § 584–6(a) clearly and unambiguously permits John, the presumed father, to bring a paternity action for the purpose of declaring the nonexistence of a father and child relationship between John and Daughter.

We are "bound by the plain, clear, and unambiguous language of the statute unless the literal construction would produce an

absurd and unjust result, and would be clearly inconsistent with the purposes and policies of the statute." *Sherman v. Sawyer*, 63 Haw. 55, 59, 621 P.2d 346, 348–49 (1980) (citations omitted). We conclude that a literal construction of HRS § 584–6(a) does not produce an absurd and unjust result and is not clearly inconsistent with the purposes and policies of the statute.

From its inception in 1975, HRS § 584–6(a) permitted certain specified persons to bring an action for the purpose of declaring the "nonexistence" of the father and child relationship. The language expressly allowing a presumed father to bring such an action was added to HRS § 584–6(a) by Act 224, § 1, 1991 Haw. Sess. Laws 518, effective June 6, 1991. Thus, the family court was wrong in stating that "the purpose of the Uniform Parentage Act is not to take away fathers from kids, but to give them parents." For the same reason, cases such as *Matter of Marriage of Ross*, 245 Kan. 591, 783 P.2d 331 (1989), and *McDaniels v. Carlson*, 108 Wash. 2d 299, 738 P.2d 254 (1987), which were cited by the GAL in his memorandum, have no precedential value.

It could be argued that the family court's ruling was right because Richard Zoe (Richard) was an indispensable party and he was not a party in the case. We conclude that Richard was not an indispensable party. HRS § 584–9(a) (Supp. 1992) states in relevant part that "each man alleged to be the natural father, shall be made [a party], or, if not subject to the jurisdiction of the court, shall be given notice of the action in a manner prescribed by the court and an opportunity to be heard." According to the record, Richard was not physically present in Hawai'i and was not subject to the jurisdiction of the family court. So long as that continues to be a fact, Richard need not be made a party, but he shall be given notice. On remand, he must be given notice and an opportunity to be heard.

Jane admits John's statutory right to seek a judicial determination of his non–paternity. She expresses the view that "[a]

presumptively legitimate child of questionable parentage should know the truth of her parentage — both, if there is a difference, her natural and her legal parentage." We agree.

However, Jane contends that

> [t]he trial court correctly, in the interest of judicial economy, dismissed the paternity case. There is no logic in allowing two parallel, tandem cases to proceed which both involve the same parties, many of the same facts and many of the same issues. The issue of paternity should be decided in the divorce case (the FC–D case) pursuant to HRS § 571–47[.]

We disagree. It would be unfair to John and of no benefit to the judicial system to cause the resolution of his paternity issue to await a resolution of Jane's property and debt distribution issues.

Accordingly, we vacate the family court's March 6, 1992 order that *sua sponte* dismissed without prejudice John Doe's January 14, 1992 petition seeking a determination that he is not the natural father of Jane Roe's daughter born on March 26, 1991. We remand for further proceedings consistent with this opinion.

*David C. Farmer* and *Jerilynn Ono Hall* (Case & Lynch of counsel) on the briefs for petitioner–appellant.

*Ian A. Macdonald* on the brief for defendant–appellee.