FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 JUL 30 AM 8: 31

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| MELISSA ECKSTROM, | ) | No. 76571-0-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| SIGURD HANSEN, | ) | PUBLISHED OPINION |
| | ) | |
| Petitioner. | ) | FILED: July 30, 2018 |
| | ) | |

BECKER, J. — Respondent Melissa Eckstrom has filed a personal injury claim against her father, petitioner Sigurd Hansen, alleging that he sexually molested her when she was two years old. At the time of the alleged abuse, Eckstrom's parents had just been through an acrimonious marriage and divorce. Eckstrom's mother accused Hansen of molesting the child, and the court was called on to decide whether Hansen should be allowed to continue having residential time with her. After a full trial in March 1992, the court found that Hansen had not abused Eckstrom. Hansen asserts that the 1992 finding of no abuse estops Eckstrom from litigating the present claim. Because Eckstrom was not a party to the 1992 proceedings, the trial court properly denied Hansen's motion to dismiss.

## FACTS

Eckstrom's parents married in 1987 and separated about a month later. Eckstrom was born in 1988. The marriage was dissolved by decree in 1989. Under the parenting plan, Eckstrom resided primarily with her mother. Hansen, a commercial fisherman who spent several months per year in Alaska, exercised his right to residential time when he was in town. Then, in 1990, the mother began to accuse Hansen of molesting the child. Although Hansen denied wrongdoing, his residential contact with his daughter was suspended by temporary order.

Eckstrom was assessed by a number of professionals during the ensuing investigation. Sometimes she made statements that indicated Hansen had molested her. In other interviews, she denied that he had touched her inappropriately. A court-appointed psychiatrist concluded there was no convincing evidence to support the allegations of sexual abuse. A guardian ad litem appointed for Eckstrom filed a report stating his opinion that Hansen had not abused Eckstrom and recommending that his visitation with her be reinstated.

A trial occurred in 1992 on Hansen's motion to resume residential contact with Eckstrom. The court made a finding that Hansen had not abused his daughter. The court provided for gradual reinstatement of his residential time with her, under therapeutic supervision intended to overcome the estrangement that had developed and to promote a close parent-child relationship.

Efforts to reunite father and daughter were unsuccessful. In 1993, Hansen relinquished his parental rights. Eckstrom's mother assumed sole custody and control of the child.

Eckstrom grew up having no contact with Hansen. In 2010, she reached out to Hansen and told him that she was planning to go to law school. She asked Hansen to give her money for tuition and other expenses, which she estimated as more than $250,000. Hansen told her that he would first want to get to know her better. They attended a joint counseling session. They had no further contact thereafter. Eckstrom went to law school and is now a practicing attorney.

This suit began in May 2016, when Eckstrom filed a complaint against Hansen seeking damages for child rape and molestation. Eckstrom claimed to have memories of Hansen's abuse and said that she was prepared to testify about her experience. Hansen denied liability and asserted the defenses of res judicata and collateral estoppel. He moved for dismissal in July 2016 on the ground that the 1992 finding of no abuse precluded Eckstrom's suit. The trial court denied the motion but granted Hansen's request for a certification under RAP 2.3(b)(4). This court granted discretionary review.[1]

---

[1] Hansen attached to his opening brief an appendix containing relevant documents filed in the earlier superior court action. These documents, originally filed under seal, were unsealed by the superior court in the present action of Eckstrom v. Hansen. Although the documents are not part of the record in this current case, the court was aware of their contents. See, e.g., Clerk's Papers at 285 n.2. We grant Hansen's request to take judicial notice that these documents are, in fact, documents that were filed with the King County Superior Court in the earlier proceedings. That fact, supported by a copy of the court's docket, is not subject to reasonable dispute. ER 201(b)(2).

ANALYSIS

Res judicata and collateral estoppel are kindred doctrines designed to prevent repetitive litigation. Bordeaux v. Ingersoll Rand Co., 71 Wn.2d 392, 395, 429 P.2d 207 (1967). Whether an action is precluded by res judicata or collateral estoppel is reviewed de novo. Ensley v. Pitcher, 152 Wn. App. 891, 899, 222 P.3d 99 (2009), review denied, 168 Wn.2d 1028 (2010); Christensen v. Grant County Hosp. Dist. No. 1, 152 Wn.2d 299, 305, 96 P.3d 957 (2004).

We have little difficulty concluding that res judicata does not apply here. One of the requirements of res judicata is that the two suits involve the same cause of action. Williams v. Leone & Keeble, Inc., 171 Wn.2d 726, 730, 254 P.3d 818 (2011). These two suits do not. The suit between the parents addressed Hansen's right to have residential time with his daughter, whereas Eckstrom now raises a claim for personal injury damages.

The closer question is the application of collateral estoppel, also known as issue preclusion. Pederson v. Potter, 103 Wn. App. 62, 69, 11 P.3d 833 (2000), review denied, 143 Wn.2d 1006 (2001). Collateral estoppel prevents relitigation of a particular issue in a later proceeding involving the same parties, even if the later proceeding involves a different claim or cause of action. Pederson, 103 Wn. App. at 69. The requirements of collateral estoppel are: (1) the identical issue was decided in the prior action; (2) the prior action resulted in a final judgment on the merits; (3) the party to be estopped was a party or in privity with a party in the earlier proceeding; and (4) precluding relitigation of the issue will not work an injustice. Williams, 171 Wn.2d at 731. When the elements of collateral estoppel

4

are met, the doctrine serves to prevent inconvenience or harassment of parties and provides for finality in adjudications. Christensen, 152 Wn.2d at 306-07.

The factual issue to be decided in Eckstrom's personal injury claim is whether Hansen sexually abused Eckstrom during the same time period as alleged in the 1992 proceeding. In the parenting plan trial in 1992, the trial court was presented with the identical issue and decided Hansen did not sexually abuse Eckstrom. The result was final judgment on the merits permitting Hansen to resume residential contact with his young daughter. Because the first two elements of collateral estoppel are satisfied, we must consider the third: whether Eckstrom, the party to be estopped, was a party or in privity with a party in the earlier proceeding.

Eckstrom was not a named party to the earlier action. The caption of the case was "In Re the Marriage of Lisa Dawn Hansen, Petitioner, and Sigurd J. Hansen, Respondent." Hansen argues that his daughter was nonetheless "effectively a party" because a guardian ad litem was appointed for her.

Hansen cites Guardianship of Robinson, 9 Wn.2d 525, 536, 115 P.2d 734 (1941). Robinson exemplifies the general principle that a minor represented by a guardian in an action is bound by the resulting judgment. RESTATEMENT (SECOND) OF JUDGMENTS § 41 (1982).

Robinson was an estate dispute. The George Washington Foundation, serving as guardian of the persons of three minors, petitioned for removal of Robert Terhune, who was then serving as guardian of their estates. Robinson, 9 Wn.2d at 534. The trial court dismissed the petition, and the foundation

appealed. The foundation argued that the trial court should have removed Terhune because Terhune had allegedly filed a false final account overstating the cash on hand when he took over from his predecessor, who had resigned.

At the earlier hearing on the final account, the foundation did not choose to appear though it had notice. The minors were personally served with notice of the hearing on the final account. A guardian ad litem was appointed "to appear and represent their interests" at the hearing. Robinson, 9 Wn.2d at 528-29, 536. The final account was approved, and no appeal was taken. Robinson, 9 Wn.2d at 529.

The Supreme Court ruled that the claim of false reporting was no longer available in the second proceeding as a ground for removing Terhune because it could and should have been litigated at the earlier hearing on the final account. Robinson, 9 Wn.2d at 536. The minors were held to be bound by the previous order approving the final account. Robinson, 9 Wn.2d at 536.

Hansen argues that under Robinson, whenever a guardian ad litem is appointed to protect a minor's interests, the minor is bound by the rulings of the court and cannot relitigate the issues resolved by those rulings. Robinson does not support stating the law so broadly. The effect of the appointment of a guardian ad litem depends on the type of case and the authority given.

The Marriage of Hansen case, King County Superior Court cause number 87-3-09135-3, was a domestic relations matter. The order appointing a guardian ad litem for Eckstrom in 1990 provided that the guardian ad litem "shall conduct a reasonable investigation of the circumstances of the child in relation to Parenting

Plan matters and shall, in that capacity, represent the best interests of the minor child."[2] The order did not authorize the guardian ad litem to receive service of process for Eckstrom or to assert claims and counterclaims on her behalf. Nothing in the terms of the order of appointment authorized the guardian ad litem to act for Eckstrom so as to make her "effectively a party" as Hansen contends. Even if the guardian ad litem had concluded that Hansen abused Eckstrom, he did not have the authority to pursue a personal injury claim on her behalf. The guardian ad litem was appointed to represent Eckstrom's interests only in connection with the pending decision on whether her father should be allowed to have residential time with her. This concern is immaterial to the present suit.

In addition, we find no authority permitting collateral estoppel to operate against a minor who is represented by a guardian ad litem in an earlier proceeding when the minor's interests in the second proceeding are not the same as in the first proceeding. In Robinson, the foundation was asserting the minors' interest in having their assets handled honestly. The exact same interest was at stake at the earlier hearing on the final account. Here, the interest now asserted by Eckstrom is to receive monetary compensation for the damages she has allegedly suffered as the result of Hansen's conduct. This is different from the Marriage of Hansen matter, where her interest was in being protected from sexual abuse, not in receiving compensation.

---

[2] Clerk's Papers at 113-14.

We conclude that the appointment of the guardian ad litem did not make Eckstrom a "party" to the dispute between her parents for purposes of collateral estoppel.

Hansen next contends that Eckstrom, if not a party, was in privity with her mother, who was a named party to the adjudication in Marriage of Hansen. Privity denotes a mutual or successive relationship to the same right or property. McDaniels v. Carlson, 108 Wn.2d 299, 306, 738 P.2d 254 (1987). Eckstrom's mother was pursuing her right as a parent to protect her child from abuse. Eckstrom did not have that same right. As a child, she had to depend on others to protect her. And Eckstrom did not succeed to her mother's rights as a parent. Eckstrom is pursuing her own distinct right as an adult to sue for personal injury damages. The requirement for privity in collateral estoppel is "strict." McDaniels, 108 Wn.2d at 306. We conclude Eckstrom was not in privity with her mother.

The fourth requirement of collateral estoppel is that precluding relitigation of the issue will not work an injustice on the party against whom the doctrine is to be applied. McDaniels, 108 Wn.2d at 303. Washington's case law on the injustice element "is most firmly rooted in procedural unfairness." Thompson v. Dep't of Licensing, 138 Wn.2d 783, 795, 982 P.2d 601 (1999). It would be procedurally unfair to Eckstrom to bind her to the outcome of an earlier proceeding that occurred when she was unrepresented by anyone with the power to act for her in litigation. At the time, she was too young to testify, too young to understand the nature of the legal proceeding, and too young to be aware of her right to pursue a tort claim.

8

As noted by the trial court, the injustice of precluding Eckstrom from bringing her own suit is underscored by the public policy of RCW 4.16.340(1). The statute provides "a broad and generous application of the discovery rule to civil actions for injuries caused by childhood sexual abuse." C.J.C. v. Corp. of the Catholic Bishop of Yakima, 138 Wn.2d 699, 712, 985 P.2d 262 (1999). It recognizes that victims may for many years "repress the meaning of the abuse or be unable to connect the abuse to any injury." C.J.C., 138 Wn.2d at 712-13.

We conclude Eckstrom is not collaterally estopped by the earlier finding that Hansen did not abuse her. She is entitled to her own day in court to try to prove that he did. We affirm the trial court decision allowing her suit to go forward.

Becker, J.

WE CONCUR:

Trickey, J

Spearman, J.

9