Michaella M. M., Appellant, v Abdel Monem El G., Respondent.

Second Department, January 16, 1984

APPEARANCES OF COUNSEL

*Lankenau Kovner & Bickford* (*Wayne N. Outten* of counsel), for appellant.

*Omar Z. Ghobashy* for respondent.

OPINION OF THE COURT

*Per Curiam.*

The issue on this appeal is whether Special Term properly granted the defendant's cross motion to vacate the plaintiff's notice to submit to a blood-grouping test pursuant to CPLR 3121. The notice to submit to the test was served in the context of the parties' divorce action. In the action, the plaintiff wife seeks, *inter alia,* (1) a judgment declaring that the plaintiff's son, now two years of age, be deemed for all purposes the child only of the plaintiff and not the defendant; (2) custody of the child; (3) to change the surname of the child and (4) a permanent injunction enjoining the defendant from visiting or attempting to con-

tact the child. The defendant husband is seeking, *inter alia,* custody of the child and a judgment enjoining the plaintiff from taking any action to disturb the "father-child relationship" now existing between the defendant and the boy.

Inasmuch as any ruling on this matter will necessarily affect the interests of the child whose paternity is in issue, the matter should be remitted to the Supreme Court, Queens County, for a hearing as hereinafter indicated after the appointment of a special guardian to represent and safeguard those interests.

This case presents the interesting question of whether a wife may compel a husband to submit himself to a blood-grouping test on the issue of paternity under circumstances where the wife is seeking to disprove, rather than prove, his paternity, i.e., an attempt to illegitimize her son.

It hardly need be said that any determination on the issue of paternity will have a profound effect on the child. As we see it, meritorious reasons exist for either ordering the blood test or disallowing it. On the one hand, if plaintiff is successful in her quest the child will be labeled illegitimate. Such a finding will result in considerable harm to the child including the loss of the right to be supported by, or to inherit from, the defendant. Moreover, in the context of this proceeding, that harm will be compounded by the additional fact that the issue of paternity will not be settled, i.e., it will only be known that the defendant is not the child's father and no decision will be made as to who is the boy's natural father. On the other hand, it may be argued that the stigma attached to illegitimacy has eased in our society in recent years, that courts are concerned with ascertaining truth, and that "the truth should out" regardless of the effect on the child.

If the instant case goes to trial without the blood test there is the possibility (1) that custody and/or visitation rights with the child will be awarded to a person who is a complete biological stranger; and (2) the child may never learn who his real father is even though a "highly accurate" tool such as the blood-grouping test is available to assist the courts in the search for the truth upon the trial of this matter. (See *Matter of Joanne O. v Andrew H. W.,* 87 AD2d 615.)

At bar, less reliable tests placed the approximate date of conception at July 9, 1980. Both parties apparently agree that the defendant was not present in this country with the plaintiff on that date. Under these circumstances, it is evident that the results of the blood-grouping test requested by plaintiff would be most probative herein.

It is beyond dispute that our courts have the power to direct a blood-grouping test in an action where the legitimacy of a child is in issue (*Kwartler v Kwartler,* 291 NY 689; *Hill v Hill,* 20 AD2d 923; *O'Brien v O'Brien,* 4 AD2d 867; *Anonymous v Anonymous,* 1 AD2d 312). Indeed, the human leucocyte antigen blood tissue test has been encouraged on the ground that it has been found to be "highly accurate on the issue of paternity and should be utilized to avoid unnecessary litigation" (*Matter of Joanne O. v Andrew H.W.,* 87 AD2d 615, *supra; Matter of Karen K. v Christopher D.,* 86 AD2d 633). Thus, notwithstanding the existence of the strong presumption of legitimacy which affixes to the offspring of a legally valid marriage, public policy permits the use of blood testing in matrimonial actions to rebut the presumption (*Dawn B. v Kevin D.,* 96 AD2d 922).

Although public policy authorizes the use of such tests, several cases have applied the doctrine of equitable estoppel as a bar to ordering the alleged father to submit to a blood test (see *Matter of Sharon GG. v Duane HH.,* 95 AD2d 466; *State of New York ex rel. H. v P.,* 90 AD2d 434; *Hill v Hill, supra*). Whether the principle of equitable estoppel should be applied in the instant case to bar the requested blood test of the defendant should not be determined from the record as it presently stands. Rather, that determination should be made only after a full hearing during which the interests of the infant child should be represented and protected.

Accordingly, the matter is remitted to Special Term for (1) the appointment of a special guardian to represent and safeguard the child's interests and (2) a hearing and determination of whether, under the circumstances of this case, the defendant husband should be compelled to undergo a blood-grouping test.

BRACKEN, J. P., O'CONNOR, WEINSTEIN and NIEHOFF, JJ., concur.

Order of the Supreme Court, Queens County, entered February 3, 1983, reversed insofar as appealed from, without costs or disbursements, and matter remitted to Special Term for the appointment of a special guardian and for a hearing in accordance with the opinion herewith.