■ ROSALIA GOLSER, Appellant, v WALTER GOLSER, Respondent.—In an action for a divorce and ancillary relief, the plaintiff wife appeals (1), as limited by her brief, from so much of an order of the Supreme Court, Queens County (Calabretta, J.), dated May 30, 1984, as directed her and her infant child to submit to a human leucocyte antigen blood-grouping test, and (2) as limited by her notice of appeal and brief, from so much

of a further order of the same court, entered November 28, 1984, as upon deeming that branch of her motion which was to renew and reargue the defendant husband's motion to compel her and the child to submit to a blood-grouping test as one to reargue, denied that branch of the motion.

Order entered November 28, 1984 reversed, insofar as appealed from, without costs or disbursements, that branch of the motion which was to renew and reargue the defendant husband's motion to compel the plaintiff wife and the child to submit to a blood-grouping test granted, so much of the order dated May 30, 1984 as orders the plaintiff and the infant child to submit to a human leucocyte antigen (HLA) blood-grouping test vacated, and matter remitted to Special Term for a hearing in accordance herewith.

Appeal from the order dated May 30, 1984 dismissed, without costs or disbursements, in light of our determination on the appeal from the order entered November 28, 1984.

This is an action for divorce in which the plaintiff wife seeks, *inter alia,* custody and support of a child, now six years old, born during the marriage and at a time when the parties were living together as man and wife. The verified complaint alleged that the parties were married in 1957 and had three children, then aged 24, 20 and 3 years of age, respectively. In his answer, the defendant husband asserted a counterclaim for a divorce based upon allegations of adultery on specific dates in 1982 with a named individual, and another counterclaim for a divorce on the ground of cruel and inhuman treatment. The defendant admitted paternity by failing to deny in his answer that the infant was a child of the marriage, and further, sought custody of the child, denominating her "the infant child of the marriage".

Subsequently, in opposition to plaintiff's motion for temporary child support, defendant stated in an affidavit sworn to on August 25, 1983, "I respectfully submit that I will be awarded custody of this child. Furthermore, the most difficult thing for me to say at this time is that I do not even know whether the child is mine or not. I love this baby, I *believe* she is my natural child" (emphasis supplied). Thereafter, the defendant moved for an order directing the plaintiff, the infant child and the named individual alleged to be the plaintiff's paramour, to submit to an HLA blood-grouping test for the purposes of excluding his paternity of the child for whom temporary support had been requested, and of establishing paternity by the alleged paramour. In his affidavit in

support, sworn to on February 24, 1984, the defendant stated, "I verily *believe* that I am not the father of Lilly * * * In that regard it would be unfair to saddle me with the responsibility of supporting the said infant child when the child *may* very well not be my daughter" (emphasis supplied). Prior to this statement of belief the defendant had not denied paternity of the child, notwithstanding his suspicions. The defendant offered no evidence to support his change of belief except the plaintiff's testimony, given at an examination before trial held on November 4, 1983, that in December 1980, she "borrowed" $30,000 from the alleged paramour to purchase a house in Columbia County, and that in May 1982 she transferred ownership of the premises to the alleged paramour in exchange for cancellation of the debt.

In her papers opposing the taking of blood tests, the plaintiff argued that the doctrine of estoppel barred the defendant from denying his paternity. She neither denied that an adulterous relationship existed at the time of the infant's conception in February 1979, nor the possibility that the plaintiff was not the child's father.

Special Term granted the motion to the extent of directing the parties and the infant to undergo an HLA test. The court did not address that branch of the motion which sought to compel the alleged paramour to submit to an HLA test. Special Term also appointed a guardian ad litem to protect the interests of the child. The guardian subsequently issued a preliminary report in which she recommended against allowing the blood-grouping test. Thereafter, the plaintiff moved to renew and reargue the prior order on the basis of the guardian ad litem's report. Special Term, characterizing the motion as one to reargue, denied the motion as untimely and not based upon new facts or evidence. These appeals followed.

Prefatorily, we note that the plaintiff's second motion was one to renew and reargue. The guardian ad litem's report was issued on or about August 31, 1984, and, therefore, was unavailable to plaintiff at the time the original order was made on May 30, 1984. Accordingly, the plaintiff's second motion was based upon new material which was unavailable at the time the original motion was made and said motion was, therefore, a motion to renew and reargue which is not limited by the same time constraints as a motion seeking only reargument *(see,* Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C2221:9, p 160). We find that the motion was timely brought and will consider it.

The issue presented on these appeals, namely, the propriety

of ordering an HLA test under the facts of this case, does not admit of easy resolution. It is well established that the Supreme Court has the power to direct a blood-grouping test pursuant to CPLR 3121 (a) in an action "where the legitimacy of a child born during wedlock is questioned" *(Kwartler v Kwartler,* 291 NY 689, 690; *Michaella M. M. v Abdel Monem El G.,* 98 AD2d 464, 466; *Hill v Hill,* 20 AD2d 923). However, more than "mere suspicion" of nonpaternity must be shown *(Anonymous v Anonymous,* 1 AD2d 312, 318). The presumption of legitimacy, which has been termed "one of the strongest and most persuasive known to the law" *(Matter of Findlay,* 253 NY 1, 7; *see also, Matter of Fay,* 44 NY2d 137, 142; *Matter of Department of Social Servs. v Thomas J.S.,* 100 AD2d 119, 126), is, nevertheless rebuttable by use of blood testing *(State of New York ex rel. H. v P.,* 90 AD2d 434, 438; *Anonymous v Anonymous, supra,* p 316).

Under certain circumstances, the doctrine of equitable estoppel may be raised as a defense to preclude a party from being compelled to submit to a blood-grouping test *(see, Matter of Sharon GG. v Duane HH.,* 95 AD2d 466, *affd* 63 NY2d 859; *State of New York ex rel. H. v P., supra; Matter of Montelone v Antia,* 60 AD2d 603). Estoppel has been invoked to prevent the mother of a child who has been held out as the legitimate issue of the mother's lawful husband for a substantial period of time from challenging the paternity of the child by her husband for the sole purpose of advancing her custody or visitation rights *(see, e.g., Matter of Boyles v Boyles,* 95 AD2d 95; *State ex rel. H. v P., supra; Hill v Hill, supra).* The principle of equitable estoppel has also been applied to prevent a former husband presumed to be the father of a child born during the marriage from disproving his paternity of the child so as to avoid his obligation to pay support *(see, Matter of Montelone v Antia, supra; Matter of Time v Time,* 59 Misc 2d 912).

Notwithstanding these principles, we conclude that there is insufficient information in the present record upon which to make an informed determination on the relevant issues presented on the instant appeals, i.e., the best interests of the child, the propriety of ordering an HLA test of the parties and the infant child, and the applicability of the doctrine of equitable estoppel. The matter must be remitted for a full hearing during which the interests of the child should be vigorously represented and protected *(see, Michaella M. M. v Abdel Monem El G.,* 98 AD2d 464, *supra).* Gibbons, J. P., Thompson, O'Connor, Weinstein and Kunzeman, JJ., concur.