■ MELINDA JOHANNESSEN, Respondent, v HARALD JOHAN-

NESSEN, Appellant.—Kane, J. P. Appeal from a judgment of the Supreme Court (Torraca, J.) ordering, *inter alia,* child support, entered March 20, 1987 in Ulster County, upon a decision of the court, without a jury.

Plaintiff and defendant were married in 1960. During the course of the marriage, plaintiff gave birth to four children, the two youngest of which were born in 1967 and 1969. In 1980, defendant left the marital home. Thereafter, in 1981, plaintiff commenced this action for divorce seeking, *inter alia,* child support. At the trial of the matter, plaintiff testified that defendant was not the natural father of the two youngest children. However, plaintiff sought support on the basis of equitable estoppel claiming that defendant knew they were not his children from the time of their births and yet continued to support them. Defendant, for his part, testified that plaintiff never told him they were not his children until the summer of 1978 or 1979. Apparently, blood tests were ordered which excluded defendant as the children's father. After trial, Supreme Court ordered defendant to, *inter alia,* pay child support for the two youngest children. Defendant has appealed.

In our view, the matter must be remitted for a new hearing on the question of paternity and support of the two younger children. The presumption of legitimacy, while rebuttable, is "one of the strongest and most persuasive known to the law" *(Matter of Findlay,* 253 NY 1, 7; *see, State of New York ex rel. H. v P.,* 90 AD2d 434, 437). It is true that the presumption of legitimacy may be overcome by competent proof of exclusion such as a blood test *(Anonymous v Anonymous,* 1 AD2d 312, 318). Furthermore, in a divorce proceeding where paternity is at issue, a court has the power and may, in its discretion, order blood tests *(see, Michaella M. M. v Abdel Monem El G.,* 98 AD2d 464, 465). In this case, however, while the testimony may have warranted the ordering of blood tests, there was no special guardian appointed to protect the interests of the children or offer initial objections to the blood tests *(see, Golser v Golser,* 115 AD2d 695, 697). A determination on the issue of paternity will have a profound effect on the children and meritorious reasons exist for either ordering the blood tests or disallowing them *(see, Michaella M. M. v Abdel Monem El G., supra,* at 465). A decision excluding defendant as the father will label the children illegitimate and such a result includes not only the loss of support but also any rights to inherit from defendant *(see, supra).* The issue of paternity will also remain unsettled since it would only be known that defendant was

not the children's father, not who their actual father is (see, supra).

Given these circumstances and concerns, it was therefore improper for Supreme Court to have made its decision without first having appointed a special guardian to protect the children's interests. A guardian should have been appointed prior to any hearing and prior to the administration of any blood tests (see, supra). The failure to do so meant that the children's rights were not adequately protected during the pendency of the litigation.

Additionally, the question of whether the principle of equitable estoppel applies should also not be determined from the record as it now stands. This is true not only on the question of whether defendant should be estopped from refusing to pay support, as plaintiff suggests, but also on whether the doctrine would bar the administration of blood tests (see, Golser v Golser, supra, at 698).

To conclude, any determination on the question of support and paternity should be made only after a special guardian is appointed to protect the children's interests and the matter should be remitted for a full hearing (see, Matter of Ettore I. v Angela D., 127 AD2d 6; Golser v Golser, supra; Michaella M. M. v Abdel Monem El G., supra).

Judgment modified, on the law, without costs, by reversing so much thereof as ordered defendant to pay child support of the two youngest children; matter remitted to the Supreme Court for appointment of a special guardian and for further proceedings not inconsistent with this court's decision; and, as so modified, affirmed. Kane, J. P., Mikoll and Yesawich, Jr., JJ., concur.

Mercure and Harvey, JJ., dissent in a memorandum by Harvey, J. Harvey, J. (dissenting). We respectfully dissent.

This case was tried with the full understanding of all parties that defendant was not the biological father of the two youngest children. Accordingly, the only real argument urged by plaintiff to obtain the requested support was the doctrine of equitable estoppel.

In our view, there was insufficient proof produced at trial to justify the invocation of this doctrine. "An estoppel rests upon the word or deed of one party upon which another rightfully relies and so relying changes his position to his injury" (Metropolitan Life Ins. Co. v Childs Co., 230 NY 285, 292; accord, Nassau Trust Co. v Montrose Concrete Prods. Corp., 56 NY2d 175, 184; Triple Cities Constr. Co. v Maryland Cas. Co.,

4 NY2d 443, 448). Plaintiff produced no proof that she changed her position in any manner because defendant continued to support the infants for some period of time after learning of plaintiff's infidelity. Our own view of the evidence would lead us to believe defendant when he testified that he did not discover the true parentage of the children until shortly before he left his wife. But even if he learned of it long before that, there was nothing about his conduct that should have led plaintiff to believe that he was committing himself indefinitely to the support of her children. Certainly she did not give up anything relying upon such a belief. She always had and still has the right to obtain an order directing the true father to support his children. Even the children had no expectation of being supported by defendant since plaintiff admitted that they knew for some time that defendant was not their natural father.

We believe that remitting this case for the purpose of appointing a special guardian and conducting a trial de novo would place the court and the special guardian in an untenable position. The irrefutable truth of defendant's nonpaternity is already known, established by the mother's testimony and admissions as well as by the blood tests already administered proving that defendant is not the natural father of these two children. Such evidence sufficiently overcame any presumption of legitimacy that existed (see, Matter of Jeanne C. v Peter W. D., 134 AD2d 779, 781, appeal dismissed 71 NY2d 994; Matter of Betty V. v George V., 66 AD2d 785; Hansom v Hansom, 75 Misc 2d 3).

The majority relies on Michaella M. M. v Abdel Monem El G. (98 AD2d 464) and Golser v Golser (115 AD2d 695) in support of its determination, but neither of these cases presented an analogous situation where blood tests had already been administered without challenge. While blood tests were already taken in Matter of Ettore I. v Angela D. (127 AD2d 6), that case involved an attempt by a third party to the marital relationship to illegitimize a child against the married couple's wishes. Because the petitioner in that case delayed three years before attempting to assert his rights, he was properly estopped in order to thwart the possibly vindictive destruction of an existing parent-child relationship (see, supra). The facts in Ettore are readily distinguishable from the instant case since the children here do not live with defendant and no parent-child bond could possibly be severed by a judicial recognition of defendant's nonpaternity. For instance, although biological parentage of the children was a nonissue at

trial, plaintiff did testify as to the identity of the children's biological father and how she informed the children of his identity. She also told the court that the biological father's attitude and actions toward the children were consistent with that of a parent-child relationship. He visited them, brought them gifts and contributed towards their support. Although in the past being born out of wedlock undeniably created an onerous social stigma, we must acknowledge that modern mores and attitudes have largely eliminated any taint.

Accordingly, we would modify Supreme Court's judgment in this case on the facts by reversing so much as found defendant liable for child support of plaintiff's two youngest children.