■ VITO L., Appellant, v FILOMENA L., Respondent.—In an action for a divorce and ancillary relief, the plaintiff husband appeals from so much of an order of the Supreme Court, Richmond County (Kuffner, J.), dated June 22, 1989, as, after a hearing, denied his motion to compel the defendant and her infant child to submit to a human leucocyte antigen blood-grouping test.

Ordered that the order is affirmed insofar as appealed from, with costs.

This is an action for a divorce in which the plaintiff husband sought an order directing the defendant wife and the infant child, now nine years old and born during the marriage, to submit to a human leucocyte antigen blood-grouping test (hereinafter HLA test) for purposes of excluding his paternity of the child. In his original complaint, the husband alleged that the infant was the issue of the marriage. After issue was joined, the husband sought to amend his complaint to assert "there are no issue of this marriage". Leave to serve an amended complaint was granted.

The Supreme Court responded to the husband's application for HLA tests by ordering a fact-finding hearing at which the defense of estoppel and the propriety of ordering the wife and the child to submit to HLA tests were considered. The court appointed a Guardian Ad Litem to protect the interests of the infant in the proceedings.

The facts relevant to this appeal were elicited at the fact-finding hearing. It was not disputed that the child, born on September 26, 1981, was conceived prior to the parties' marriage on March 29, 1981. The wife testified to having engaged in sexual intercourse with the husband prior to their marriage, including during the period of probable conception. She claimed that she told the husband in January 1981 that she was pregnant, prompting a mutual decision to accelerate the date of their wedding from September to March 1981. Shortly after their marriage and before the child was born, the husband returned to his native country of Italy to live. The wife had no contact with the husband until over a year after

his departure, when the child was about nine months old. Through a family friend who had gone to Italy, the wife learned of the husband's whereabouts and wrote to him enclosing pictures of the child.

In September 1986 the wife and the child went to Italy and stayed with the husband at his mother's house. Having reconciled with the husband, the wife and the child returned to the United States to pack their belongings and send them to Italy. She and the child returned to Italy in November 1986 where they lived with the husband until April 1987. During this time the husband proudly claimed the child was his daughter in front of his family and friends. The marital relationship apparently deteriorated, resulting in the wife and the child moving back to the United States. The wife denied engaging in sexual relations with anyone other than the husband prior to learning of her pregnancy. She further denied that at any time prior to the instant action the husband had claimed he was not the father of the child. Nor did she ever tell the child that someone other than the husband was the child's father.

The testimony of the husband was in sharp contrast to the wife's testimony. He strenuously denied being the father of the child and claimed that he had previously disputed his paternity. The husband claimed that he had not engaged in premarital sexual relations with the wife and, indeed, they did not have sexual intercourse until the second week of their marriage. He further denied knowing that the wife was pregnant when he married her, claiming that his first knowledge of the pregnancy was two weeks after the wedding. The husband responded to this news by punching the wife. The wife had him arrested. The husband acknowledged that he then left the wife and returned to Italy, where he remained until 1988. He admitted receiving a letter and baby pictures from the wife but maintained that he had destroyed the pictures because he knew he was not the father. The husband asserted that the only time he had contact with the child was during the latter part of 1986 through early 1987 when he lived in a rented house with the wife and the child. Notwithstanding the prolonged encounter with the child, the husband claimed he could not recognize a passport photograph of the child which he was shown during cross-examination.

Following the hearing the Guardian Ad Litem filed his report. He concluded that the husband had failed to rebut the presumption of legitimacy, and should be estopped from disproving his paternity by virtue of his conduct and his delay in challenging his paternity. The Guardian Ad Litem further

concluded that the child would suffer severe emotional damage were she required to submit to an HLA test.

The Supreme Court denied the husband's application for HLA tests. In its decision, the Supreme Court credited the wife's testimony but found the husband's testimony to be "less than forthcoming". Upon its findings that during the period of the parties' cohabitation in Italy the husband had held the child out to family and friends as his daughter and he had not denied his paternity for some eight years, the Supreme Court concluded that he should be estopped from disavowing his paternity of the child in an attempt to avoid his support obligation. This appeal ensued.

The Supreme Court has the power and may pursuant to CPLR 3121 (a), in its discretion, order a blood-grouping test in any action "where the legitimacy of a child born during wedlock is questioned" *(Kwartler v Kwartler,* 291 NY 689, 690; *see, Golser v Golser,* 115 AD2d 695, 698; *Michaella M. M. v Abdel Monem El G.,* 98 AD2d 464, 466). Indeed, the HLA test has been held to be highly accurate on the issue of paternity *(see, Matter of Denise H. v John C.,* 130 AD2d 748; *Matter of Constance G. v Herbert Lewis L.,* 119 AD2d 209, 212). The presumption of legitimacy, which has been termed "one of the strongest and most persuasive known to the law" *(Matter of Findlay,* 253 NY 1, 7; *see, Matter of Fay,* 44 NY2d 137, 142; *Matter of Constance G. v Herbert Lewis L., supra,* at 211) is, therefore, rebuttable by competent proof of exclusion such as by blood testing where to do otherwise would outrage common sense and reason *(see, Matter of Findlay, supra,* at 8; *Golser v Golser, supra,* at 698; *Anonymous v Anonymous,* 1 AD2d 312, 318).

Although the evidence may warrant the ordering of blood tests, the doctrine of equitable estoppel may be raised as a defense to preclude a party from being compelled to submit to a blood-grouping test *(see, Matter of Ettore I. v Angela D.,* 127 AD2d 6; *Golser v Golser, supra; see also, Matter of Sharon GG. v Duane HH.,* 95 AD2d 466, 468, *affd* 63 NY2d 859). The paramount concern in this type of case should be the best interests of the child *(see, Matter of Ettore I. v Angela D., supra,* at 14; *Golser v Golser, supra; Michaella M. M. v Abdel Monem El G., supra).*

Viewing the circumstances of this case in light of these principles, we find the Supreme Court properly denied the husband's application for HLA tests. In the circumstances of this case the husband should be estopped from denying pater-

nity. The hearing court's findings which are based upon a first-hand assessment of the witnesses are entitled to great deference on appeal *(see, Creem v Creem,* 121 AD2d 676, 677; *cf., Matter of Constance G. v Herbert Lewis L.,* 119 AD2d 209, 210, *supra).* We conclude that the Supreme Court's resolution of issues as to the witnesses' credibility is supported by the record and we decline to disturb its findings.

The wife's testimony established that the parties had a sexual relationship during the period of probable conception. At no time during the child's first eight years of life did the husband deny that he was the father of the child or pursue any legal remedies to disavow paternity. During the periods that the parties cohabited the husband held himself out as the father of the child. The timing of the husband's disavowal of paternity seriously undermines its veracity. Despite his assertions to the contrary, we must wonder whether the husband is denying his paternity of the child simply to avoid his support obligations. Moreover, the best interests of the child would be served by affirming the Supreme Court, since the effect of the HLA tests would only confirm the presumption of legitimacy or rebut the presumption without establishing the identity of the natural father. No purpose would be served by branding the child "illegitimate" and depriving her of the only father she has ever known. Having accepted his status as the father of the child without objection for nearly eight years, the husband is estopped from now vindicating his rights at the expense of the child's emotional well-being. Thompson, J. P., Brown, Miller and O'Brien, JJ., concur.