OPINION OF THE COURT
David B. Saxe, J.
There is a concept in matrimonial law known as "divisible divorce”, under which a party may obtain a divorce from a court having jurisdiction to dissolve the marital res although that same court lacks jurisdiction to determine any ancillary financial issues between the parties. The case now before me leads me to conclude that paternity may be similarly divisible, so that the court may render a declaration of nonpaternity, yet — under appropriate circumstances — continue to impose upon the man an obligation to support the child.
This is a postjudgment motion by the plaintiff former husband, pursuant to CPLR 5015 (a) (2) and (3) to vacate, set aside or amend the provision of the parties’ divorce judgment pertaining to the support and custody of Lauren, the child born during the marriage. In his motion the plaintiff also seeks an order pursuant to CPLR 3121 directing the parties and Lauren to submit to DNA testing. In opposition to the motion, the defendant former wife suggests that the plaintiff’s application must fail under the doctrine of equitable estoppel.
FACTS
The plaintiff, Richard B., a urology surgeon, and the defendant, Sandra B. B., a sales executive, were married on March 12, 1983. Approximately seven years later, on July 9, 1990, their first and only child, Lauren Susan B. B., was born.
On June 26, 1992, Mr. B. sued for divorce on cruelty grounds, alleging physical violence, mental humiliation, and a long-standing adulterous affair between Mrs. B. and David K.; specifically, the verified complaint noted that in May 1992, Lauren’s nanny, Julie, told the plaintiff that the defendant had revealed to her that Lauren was David K.’s child. Yet, *125 among the relief Mr. B. sought in the action was custody of the child.
On May 26, 1993, the parties entered into a written agreement resolving all aspects of the case. This agreement was ultimately incorporated into the divorce judgment entered on June 21,1993.
Meanwhile, in May 1993, the plaintiff and his present wife Ellen were experiencing problems conceiving a child, and consulted a fertility specialist. Ultimately, in June 1993 the plaintiff was diagnosed as having a fertility problem called varicoceles. The plaintiff adds that in July and August 1993 he obtained additional reason to believe that Lauren was not his biological child. On August 15, 1993, he therefore took the child to have a blood test administered. The results of that blood test conclusively excluded the plaintiff as the child’s father. This motion ensued, and since that test the plaintiff has not seen Lauren.
DISCUSSION
The presumption of legitimacy has been termed one of the strongest and most persuasive known to law (Matter of Findlay, 253 NY 1 [1930]). Yet, with the passage of time "the presumption of legitimacy has been withering and shrinking in the face of scientific advances” (Anonymous v Anonymous, 1 AD2d 312, 318 [2d Dept 1956] [ordering blood grouping tests in matrimonial action involving a challenge to paternity]). The presumption may be overcome by clear and convincing evidence disproving legitimacy (Family Ct Act § 531), such as blood tests excluding the husband as the child’s father (see, Anonymous v Anonymous, 1 AD2d 312, supra). However, due to public policy promoting above all else the welfare, stability and best interests of the child, the doctrine of equitable estoppel has regularly been applied in paternity matters (see, Matter of Campbell v Campbell, 149 AD2d 866 [3d Dept 1989], citing Matter of Ettore I. v Angela D., 127 AD2d 6 [2d Dept 1987]; Matter of Montelone v Antia, 60 AD2d 603 [2d Dept 1977]).
Equitable estoppel is the principle by which a party is absolutely precluded from denying, or asserting the contrary of, any material fact which, by his words or conduct, affirmative or negative, intentionally or through culpable negligence, he has induced another who had a right to rely upon such words or conduct, to believe and act upon them, thereby *126 changing his position in such a way that he would suffer injury if such denial or contrary assertion were allowed (57 NY Jur 2d, Estoppel, Ratification and Waiver, § 13, at 17-18; § 15). The doctrine holds a person to representations made or positions assumed where inequitable consequences would otherwise result to another who has in good faith relied on them. "It concludes the truth in order to prevent fraud and falsehood and imposes silence on a party only when in conscience and honesty he should not be allowed to speak” (28 Am Jur 2d, Estoppel and Waiver, § 28, at 630). Because of its conclusiveness, the doctrine must be carefully applied, and invoked only when equity clearly requires its application. It should not be used as a shield or protection for fraudulent conduct (see generally, 28 Am Jur 2d, Estoppel and Waiver, § 28; General Stencils v Chiappa, 18 NY2d 125 [1966]; Isaacson v Slote, 60 Misc 2d 1 [1969]).
In applying the doctrine of equitable estoppel, many courts have expressed a reluctance to "bastardize” children or "brand” them illegitimate (see, e.g., Vito L. v Filomena L., 172 AD2d 648, 651 [2d Dept 1991]; Purificati v Paricos, 154 AD2d 360, 362 [2d Dept 1989]; Matter of Campbell v Campbell, 149 AD2d 866 [3d Dept 1989], supra). However, in my view the concern about "bastardizing” children is something of an anachronism. While in times past a severe stigma attached to children born out of wedlock, any such stigma which remains in modern urban American culture is substantially diminished. There has been an enormous rise in births to single mothers (see, Anonymous v Anonymous, NYLJ, Jan. 18, 1991, at 21, col 6 [Sup Ct, NY County, Glen, J.]), and society now includes alternative families of which no husband is a part (see, e.g., Matter of Thomas S. v Robin Y., 157 Misc 2d 858 [Fam Ct, NY County 1993]). Indeed, it has been noted that "single motherhood is * * * often a source of pride and empowerment rather than of stigma and deprivation” (Anonymous v Anonymous, at 22, col 5, supra). Therefore, the prospect that a child would be termed "illegitimate” does not in and of itself provide a basis for estopping the plaintiff from challenging his status as the child’s father.
Other courts have applied the doctrine of equitable estoppel based upon the need to ensure and protect the continuity of established, functional parent-child relationships and bonds (see, e.g., Matter of Ettore I. v Angela D., 127 AD2d 6 [2d Dept 1987], supra; Matter of Thomas S. v Robin Y., 157 Misc 2d 858, supra). However, in such cases the person raising the *127 issue of paternity has sought to interfere in an intact relationship, or sever a bond between a child and adult parent whose relationship is secure and loving.
This is not such a case. The plaintiff father has himself severed the loving bond he had with the child, and it is not within the court’s power to order and enforce a loving father-child relationship (see, Matter of Baby Boy C., 84 NY2d 91). Thus, equitable estoppel is powerless to protect the parent-child bond.
Moreover, in many circumstances involving a later denial of paternity, the doctrine of equitable estoppel has been found inapplicable. In Queal v Queal (179 AD2d 1070 [4th Dept 1992]), the former husband first heard six years after the parties’ divorce that his former wife was claiming he was not the child’s father. In reversing the trial court’s denial of the husband’s motion to reopen and modify the divorce decree, the court held that the former husband was not equitably es-topped from challenging paternity in the circumstances of that case.
Similarly, in Elizabeth A. P. v Paul T. P. (199 AD2d 1030 [4th Dept 1993]), the former husband heard rumors about the paternity of the parties’ third child, and two years after the divorce judgment he obtained the cooperation of his former wife in having blood tests performed on themselves and the child. Based on conclusive HLA tests and the former wife’s admission that she "may have had another sexual partner at the approximate time of the [child’s] conception” (supra, at 1030), defendant sought to modify a 1990 divorce judgment. While defendant’s child support obligation had been effectively terminated by the Erie County Family Court, the issue of paternity remained. The Supreme Court then denied the application as to paternity. On appeal this was reversed, the Court holding that (at 1030) "[n]either public policy considerations nor equitable estoppel bars [the former husband] from challenging paternity,” and that a hearing must be held before defendant’s application may be either granted or denied. The Court appointed a Law Guardian to represent the child’s best interests.
Of course, one major concern in these cases, sometimes express and sometimes implied, is to ensure that under appropriate circumstances children continue to be supported in the manner established prior to the challenge to paternity (see, Matter of Montelone v Antia, 60 AD2d 603 [2d Dept 1977], *128 supra [the Court equitably estopped the husband from challenging paternity 15 years after the execution of a divorce agreement which provided for support of the children]; see also, Campbell v Campbell, 149 AD2d 866, 867, supra [nine years after a divorce and support judgment was rendered, the husband sought to nullify his child support obligation based on his "recent discovery that he was medically incapable of fathering children during the period of his marriage,” and the Court equitably estopped the husband from challenging paternity, noting that the children were 16 and 10 years old at the time of the suit, and remarked that the husband was being selfish in trying to avoid further support payments]).
While I view the doctrine of equitable estoppel as inapplicable here to prevent the plaintiff from proving that he is not the father of the child, that doctrine may nonetheless apply to require the continued provision of appropriate support, if the requirements for application of the doctrine are met. After all, paternity entails a relationship which may involve other rights and obligations besides support, and the man challenging paternity should be entitled to avoid any such other rights or obligations. Notwithstanding the absence of a legal parent-child relationship, under appropriate circumstances the continued support of the child is an issue to which the doctrine of equitable estoppel may be applicable (cf., Matter of Baby Boy C, 84 NY2d 91, supra).
Court-ordered HLA blood tests must be performed, and a hearing must be conducted both on the issue of paternity and as to whether the plaintiff should be estopped from seeking to cancel his child support obligation. Sandra Katz, Esq., Black & Katz, 15 Pennsylvania Plaza, New York, New York 10001, (212) 643-3300, is hereby appointed to serve as guardian ad litem to represent the interests of the child (see, Elizabeth A. P. v Paul T. P., 199 AD2d 1030, supra; Johannessen v Johannessen, 148 AD2d 894 [3d Dept 1989]). The plaintiff, defendant and the child must submit to HLA paternity testing by Roche Biomedical Laboratories, located at 111 Eighth Avenue, New York, New York, on September 8, 1994, at 11:00 a.m. The plaintiff must bring with him at that time a certified check or money order in the amount of $300. The test shall be processed under New York County Supreme Court account number 31739215, and the results sent directly to Justice Saxe. Upon receipt of the results, this matter shall be set down for a hearing.