[634 NYS2d 866]

KAREN PROWDA, Respondent, v MARTIN T. WILNER, Appellant.

Third Department, December 7, 1995

### APPEARANCES OF COUNSEL

*Chernin & Gold,* Binghamton *(Wiley, Rein & Fielding,* Washington, D.C. *[Daniel E. Troy]* of counsel), for appellant.

*Lewis & Shapiro,* Endicott *(Richard C. Lewis* of counsel), for respondent.

### OPINION OF THE COURT

YESAWICH JR., J.

Plaintiff commenced this divorce proceeding in July 1993, approximately two months prior to giving birth to a daughter, alleged to be the only child of the parties' brief marital union. Defendant contends that plaintiff engaged in an extramarital sexual relationship about the time of conception and, consequently, that he lacks sufficient knowledge to confirm or deny plaintiff's allegation that the child is "a child of the marriage". Defendant, who avers that he is willing to support the child if he is the biological father, moved for a blood-grouping test pursuant to Family Court Act § 418 (a) to determine the child's paternity.[1]

Supreme Court denied the motion, holding that, given the presumption of legitimacy of a child born to a married woman, defendant's conclusory allegations that plaintiff had an affair—which she denies—are insufficient to raise an issue of fact with respect to the child's paternity and, accordingly, that it was without discretion to order a blood test. Thereafter, the court denied defendant's motion for reconsideration, finding

---

1. While, as the dissent points out, CPLR 3121 (a) technically governs the parties' dispute over blood testing in this matrimonial action, it should be noted that neither party has challenged Supreme Court's application of the standards set forth in Family Court Act § 418. In any event, like the dissenter, we would reach a similar outcome under either statute, for each requires that the court exercise its discretion, taking into account the best interest of the child, in deciding whether to order a requested test. It is this which Supreme Court did not undertake to do.

that defendant had failed to demonstrate why the new evidence he presented in support thereof—telephone records purportedly substantiating the alleged affair between plaintiff and a former boyfriend—could not have been submitted in connection with the original motion. Clarifying the basis for its original holding, Supreme Court explained that, because "the potential illegitimacy of the child which may result [from testing] * * * is presumed to be adverse to the interests of a child born to a married woman", "plaintiff did not have to also prove that the testing would not be in the best interests of the child". In the court's view, once plaintiff demonstrated that the presumption applied, the burden shifted to defendant to come forward with facts to rebut it.

We do not read the statute as providing for such burden shifting, but rather as expressing a legislative intent that testing be ordered in a dispute of this kind unless the court explicitly finds, because of the presumption (or one of two other grounds, not relevant here) that the child's best interest will not be served thereby. There is no requirement that the movant make any factual showing to support his or her allegations of paternity or nonpaternity; all that is necessary is that the movant articulate some basis for those allegations, so as to demonstrate that a nonfrivolous controversy as to paternity exists. Defendant's assertions—that plaintiff was romantically involved with the man he contends is the child's father for seven years before marrying defendant; during the period of conception, consulted frequently with her alleged paramour while visiting her parents in Binghamton; invited him to take a position of prominence at her father's funeral; and asked defendant for a divorce within two weeks of learning of her pregnancy—taken together, are more than sufficient to meet this requirement. Indeed, to demand more would, in many cases, transform the rebuttable presumption into an absolute bar to a paternity contest, for the test results are often the most persuasive, if not the only, evidence available to rebut the presumption (*see, e.g., Matter of Richard W. v Roberta Y.*, 212 AD2d 89, 91-92; *cf., Kimberly A. v Vincent A.*, 156 Misc 2d 971, 973-974).

To avoid operation of the general rule favoring testing, the party seeking to do so—here, plaintiff—must adduce facts sufficient to support the finding necessary to trigger the exception (*see, Kimberly A. v Vincent A., supra,* at 973; Besharov, 1990 Supp Practice Commentary, McKinney's Cons Laws of NY,

Book 29A, Family Ct Act § 418, 1995 Pocket Part, at 49).[2] To accomplish this, plaintiff must show more than simply that the presumption applies, but also that, given the entirety of the circumstances, including the applicability of the presumption, such testing will not serve the best interest of the child (cf., *Matter of Lanpher v Lanpher*, 215 AD2d 905, 906; *Della Vecchia v Goffredo*, 203 AD2d 511, 512). Significantly, the Legislature did not, when amending the statute, impose a blanket prohibition on testing whenever the presumption comes into play (though it could readily have done so); had that result been intended, there would have been no need for insertion of the "best interest" language into the exception.

Thus, once a court finds that the presumption applies, the court must then balance the benefit, if any, that the child will obtain from its application, along with other factors that weigh against testing, against any countervailing concerns. The Legislature has recognized that when the presumption comes into play, the prevailing circumstances may be such that not ordering the test will benefit the child. Before arriving at that conclusion, however, the court must consider many factors, not the least of which are the child's best interest in knowing, with certainty, the identity of his or her biological father; whether the movant seeks to prove or disprove his paternity; if the latter, whether the identity of others who may be proven to be the father is known or likely to be discovered, and if so, their willingness and ability to assume that role; the traumatic effect, if any, the testing procedure may have on the child; and the impact, if any, that continuing uncertainty may have on the father-child relationship, if testing is not ordered. In view of the sensitive nature of the inquiry and its importance, a Law Guardian should ordinarily be appointed to insure that the child's interests are zealously represented (*see*, *Matter of Richard W. v Roberta Y.*, *supra*, at 92).

Accordingly, the matter must be remitted so that Supreme Court can reconsider the evidence—and order further development thereof if the court deems it necessary—before deciding whether, in light of the presumption of legitimacy and other germane factors, testing would, in fact, be counter to the child's

---

2. To the extent that the decision in *Kimberly A. v Vincent A.* (*supra*) can be read as requiring the movant to make a factual showing to support his claim of nonpaternity, in our view, the amended statute demonstrates the Legislature's intent to move away from such a requirement—established in earlier case law—given the scientific and societal changes that have transpired in recent years.

best interest in this case (*cf., Matter of Robert L. A. v Sharon A. R.*, 185 AD2d 977, 979).

CASEY, J. (dissenting). I disagree with the majority's conclusion that defendant's request for blood-grouping tests did not have to be accompanied by any factual showing to support his conclusory denial of paternity of the child born during the parties' marriage. Accordingly, I respectfully dissent.

My disagreement with the majority is twofold. Family Court Act § 418 (a) applies to support proceedings in Family Court. Defendant's request was made in a divorce action in Supreme Court and, therefore, the request is governed by CPLR 3121 (a), which gives the court discretionary authority to order a blood-grouping test in any action in which the blood relationship of a party is in controversy (*see, Murtagh v Murtagh*, 217 AD2d 538, 539; *Vito L. v Filomena L.*, 172 AD2d 648, 650). The controversy must, however, be genuine (*see*, Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3121:6, at 658). The party seeking a CPLR 3121 (a) examination bears the burden of demonstrating a genuine controversy by affidavits which contain evidentiary matter and not mere conclusory statements (*see, Koump v Smith*, 25 NY2d 287, 300).

Defendant's conclusory allegation, made upon information and belief, that he is not the father of the child conceived and born during the marriage is, in my view, patently insufficient to establish that defendant's blood relationship with the child is genuinely in controversy. There is no evidentiary matter in the record to support defendant's claim, which is pure speculation. Assuming that plaintiff's involvement in an extramarital affair at the time of conception would be sufficient to demonstrate a genuine controversy about the child's paternity, defendant submitted nothing to support his suspicion that his wife might have had an extramarital affair, which is the basis of his request for the test. That plaintiff had frequent telephone conversations with another man may have been enough to make this particular defendant suspicious, but I find it insufficient to justify the requested blood-grouping test. It is clear from the record that defendant's request can be viewed as a "fishing expedition" prompted by defendant's claim that he is "not now convinced" that he is the father of the child born during the parties' marriage. Accordingly, Supreme Court correctly denied defendant's request and the orders appealed from should be affirmed.

I would reach the same conclusion if the provisions of Family Court Act § 418 (a) were applicable to this Supreme Court action. The mandatory provisions of the statute come into play only "when paternity is contested" (Family Ct Act § 418 [a]). It is my view that the term "contested" in Family Court Act § 418 (a) should be accorded the same meaning as the CPLR 3121 (a) phrase "in controversy" (*see, Kimberly A. v Vincent A.*, 156 Misc 2d 971, 973-974) and, therefore, defendant's request was properly denied because he failed to demonstrate a genuine controversy or contest about the child's paternity. There is no basis to conclude that the Legislature intended to create entirely different standards for blood-grouping tests under CPLR 3121 (a) and Family Court Act § 418 (a).

Nor is the majority's position bolstered by the addition of a requirement that the party seeking the blood-grouping test demonstrate a "nonfrivolous controversy". The amorphous concept created by the majority is apparently considerably less exacting than the clear and unequivocal standard articulated by the Court of Appeals in *Koump v Smith* (25 NY2d 287, 300, *supra*) which imposes only a modest burden. In contrast to the requirement of affidavits which contain evidentiary matter and not mere conclusory statements (*see, supra,* at 300), the majority requires no factual showing to demonstrate a "nonfrivolous controversy". In short, the majority has effectively adopted the "mere suspicion" standard, which Family Court correctly rejected in *Kimberly A. v Vincent A. (supra,* at 974). The party seeking a blood-grouping test need not rebut the presumption of legitimacy that arises when a child is born during the marriage, but I cannot agree with the majority that defendant met his burden by claiming that he is no longer convinced he is the father of the child, supported only by conclusory statements about his suspicion that his wife might have had an extramarital affair. The allegations cited by the majority are equivocal at best on the issue of the extramarital affair and have no direct bearing on the paternity issue. It may well be that defendant is sincerely suspicious about the child's paternity, which is sufficient to satisfy the majority. It is my view, however, that inasmuch as the Legislature has not seen fit to make the results of blood-grouping tests conclusive of the issue of paternity, there is no justification for not requiring defendant to meet an *objective* standard, which calls for evidentiary matter and not conclusory statements to demonstrate that paternity is genuinely contested or in controversy.

MIKOLL, J. P., CREW III and SPAIN, JJ., concur with YES-AWICH JR., J.; CASEY, J., dissents in a separate opinion.

Ordered that the orders are reversed, on the law, without costs, and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision.