■ In the Matter of COMMISSIONER OF SOCIAL SERVICES OF CITY OF NEW YORK, as Assignee of SHERON A., Respondent, v KEITH H., Appellant. [677 NYS2d 503] —In a paternity proceeding pursuant to Family Court Act article 5, the father appeals from an order of the Family Court, Kings County (Segal, J.), dated April 21, 1997, which denied his motion to vacate an order of filiation of the Family Court, New York County (Guiney, H.E.), entered March 3, 1992, and an order of support of the Family Court, Kings County (Adams, H.E.), dated November 3, 1995.

Ordered that the order is affirmed, without costs or disbursements, for reasons stated by Justice Segal in the Family Court. Thompson, J. P., Santucci, and Friedmann, JJ., concur.

Florio, J. dissents and votes to reverse the order appealed from, grant the appellant's motion, and vacate the orders of filiation and support, with the following memorandum: I respectfully dissent from the affirmance of the Family Court's

decision to deny the petition to vacate the order of filiation. In my view, the doctrine of equitable estoppel has been inappropriately invoked in this matter to bar the appellant's claim that he is entitled to an order vacating a previously-entered order of filiation. While both the majority and I agree that the core concern in paternity proceedings is the child's best interest, in my opinion Aamir's best interest has not been met because Aamir also has an interest in knowing who is his biological father.

In my view, the Family Court decision approved by the majority inappropriately relied upon *Matter of Alan N. v Diana N.* (213 AD2d 550), and *Matter of Vito L. v Filomena L.* (172 AD2d 648), in order to reach its conclusion that the doctrine of equitable estoppel should bar the appellant's challenge. That decision suggests that the appellant's failure to promptly assert that he was not Aamir's biological father has given rise to circumstances rendering it inequitable to permit vacatur of the order. However, in my opinion, *Matter of Ettore I. v Angela D.* (127 AD2d 6), which is one of our seminal cases in this area, suggests the opposite conclusion.

In *Matter of Ettore I. v Angela D. (supra)*, the child's paternity was challenged by the purported biological father. The challenge came sometime after the child had already begun to be raised and cared for by the husband of the child's mother, who acknowledged the child on the birth certificate, and who testified that he was prepared to love and support the child irrespective of whether he was the biological father. (In fact, genetic testing had already excluded him as the father.) This Court, noting that a child's best interests included, *inter alia*, securing her health, welfare, happiness, and legitimacy, invoked equitable estoppel to bar the results of HLA testing to contest the legitimacy of the three-year-old child, when the purported biological father was not the husband of the mother, and the husband testified it did not matter to him that the child was not his.

To reach that conclusion, this Court considered that the mother's husband had become the child's psychological parent, and the child had been loved and nurtured by the mother's husband through her formative years. We also found that permitting the hearing would be disruptive to the child's "need for continuity" and understanding of family. I would agree that under such a fact pattern the doctrine of equitable estoppel can and should be used as a bar in paternity proceedings "where the failure to promptly assert a right has given rise to circumstances rendering it inequitable to permit the exercise of the

right after a lapse of time" (*Matter of Ettore I. v Angela D., supra*, at 12; *see also, Matter of Sharon GG. v Duane HH.*, 95 AD2d 466, *affd* 63 NY2d 859). Thus, in determining whether or not to make use of this doctrine in paternity proceedings, we appeared to emphasize that in considering the welfare of the child the court must balance the harm of illegitimatizing the child and taking away love, affection, and support, against the right of the child to know who its biological father is, along with the father's support. It must also be noted that in *Matter of Ettore I. v Angela D. (supra)*, the right to be free from supporting a non-biological child never arose. There, it was the putative biological father who was attempting to have a filiation order entered over the objections of the mother's husband.

Here, the facts are significantly different. Since the parties were never married, the issue of legitimacy never arose. Moreover, it appears that there never was any meaningful relationship between Aamir and the appellant. Indeed, the most significant contact that appellant has had with Aamir was from Aamir's birth to age three, and he has had only the most minimal contact with Aamir in the last two years. Thus, any continuity that Aamir might have had with the appellant and any nascent understanding of family that might have been developing have already been disturbed and ruptured. Furthermore, the appellant has been unable to form an emotional or psychological relationship with Aamir, and at their last visit, Aamir offered no indication that he wanted to spend more time with the appellant.

From these facts, it is obvious that the appellant is not Aamir's psychological parent, and that the child does not feel loved or nurtured by him. Therefore, it appears to me that the only interest left to be considered which would weigh against the petitioner being allowed to challenge the filiation order, would be the monetary support that Aamir now receives from the appellant. The result, then, of denying the appellant's motion is only to compel the appellant's monetary support of Aamir, and not any paternal relationship or emotional or psychological support.

Taking these factors into consideration, it appears the denial of the petition to vacate the order of filiation preserves only Aamir's monetary best interests, but disregards the remainder of his best interests, that of knowing who is his biological father and possibly fostering an emotional and psychological relationship with him. It also totally ignores the right of the appellant not to have to support someone who is not his biological child.

I also disagree with the strong emphasis the Family Court,

in its decision, approved by the majority, placed on the passage of four years between the appellant's original consent to the entry of an order of filiation and his motion to vacate the order of filiation. In my opinion, the focus should be more on what has taken place during those four years and not just the fact that four years have passed (*see, Matter of Ettore I. v Angela D., supra*). In *Queal v Queal* (179 AD2d 1070), a similar case to the one at bar, the Appellate Division, Fourth Department, refused to apply equitable estoppel and permitted HLA testing even though the child was born in wedlock and the petitioner waited six years to contest paternity, since he began the proceeding as soon as he learned of his wife's infidelity (*cf., Matter of Vito L. v Filomena L., supra; Richard B. v Sandra B.B.*, 209 AD2d 139). In the case at bar, the appellant, in less than a year after becoming suspicious of Aamir's mother, obtained a DNA test, stopped seeing Aamir, and moved to vacate the filiation order. Thus, I submit that the appellant's request for relief is not untimely under these particular circumstances and should not be barred.

Moreover, the probable result of the affirmance of the denial of the petition to vacate the order of filiation may be the opposite of the good intentions of the majority. Potential fathers of children born out of wedlock may now feel compelled to doubt the mother's word and have a blood test immediately, or feel that they will lose their right to contest paternity at a later date. To force fathers to immediately doubt the love and trust of the child's mother might be just as disruptive to any nascent family structure as permitting this petitioner to contest paternity under these circumstances. Furthermore, the fact that Aamir's mother has refused to allow the appellant to have any contact with Aamir since October 1995, and that a DNA test has concluded that there is a zero percent possibility that the appellant is Aamir's father, cannot be ignored. The appellant, with this knowledge, no longer has any incentive to attempt to further his relationship with Aamir. Finally, I note that unlike most of the cases relied upon by the Family Court's decision, approved by the majority, the appellant has had virtually no parenting relationship with Aamir (*see, Prowda v Wilner*, 217 AD2d 287; *see also, Matter of L. Pamela P. v Frank S.*, 59 NY2d 1; *Matter of Dolan [Fay D.] v Jay E.*, 183 AD2d 969).