■ In the Matter of ANTHONY M. et al., Children Alleged to be Abused. SULLIVAN COUNTY DEPARTMENT OF FAMILY SERVICES, Respondent; JEANNA M., Appellant. (And Three Other Related Proceedings.) [705 NYS2d 715] —Spain, J. Appeal from an order of the Family Court of Sullivan County (Meddaugh, J.), entered June 25, 1998, which, in four proceedings pursuant to Family Court Act article 10, granted petitioner's motion to compel certain persons to submit to DNA paternity testing.

Petitioner commenced child abuse proceedings against, among others, respondent Jeanna M. (hereinafter the mother) and respondent Benjamin M. (hereinafter respondent). Sometime thereafter, the incarcerated mother gave birth to a baby girl (hereinafter the child). It appears that petitioner removed the newborn child from the hospital and the pending petitions were amended to add the child as an alleged abused child. After petitioner removed the child, a hearing was held pursuant to Family Court Act §§ 1027 and 1028, to consider continuing the removal or to return the child. At that hearing there was conflicting testimony regarding the child's paternity. Respondent testified that he had a vasectomy seven years prior to the child's birth and that he had told others that he believed the father of the child may have been a boarder in his house based on statements made by the mother, but he still expressed the opinion that he was the child's father. As a result of these conflicting contentions, petitioner moved for an order directing that the child, the mother and respondent submit to DNA paternity testing. Family Court temporarily placed the child in the custody of petitioner.

The mother, respondent and respondent's mother—the child's purported paternal grandmother who appeared and made known her intent to file a petition seeking custody of the child—opposed the paternity test, contending that petitioner lacked standing to seek a paternity determination in the context of these child abuse proceedings and that obtaining test results would not be in the child's best interest. They raised, among other concerns, the threat of illegitimacy and the possibility that the child's father may be Billy P., another named respondent who had been charged with first degree murder in an unrelated matter.

Family Court granted petitioner's motion, finding that testing was permissible under either Family Court Act § 418 or CPLR 3121 (a) and holding that the tests were necessary to "insure the finality of any orders which concern the ultimate disposition of the care and custody of the child". Only the mother appeals, and we affirm.

Initially, we reject the mother's contention that petitioner lacked standing to seek DNA testing within these child abuse proceedings (see, Family Ct Act art 10). While the Family Court Act offers no specific guidance on what measures or procedures to establish paternity are available to parties in an article 10 proceeding, Family Court Act § 418—contained in the article governing support—provides that the court may order such testing "on its own motion or motion of any party, when paternity is contested" (Family Ct Act § 418 [a]). Additionally, Family Court Act § 522—which governs standing to commence paternity proceedings—provides, in relevant part: "Proceedings to establish the paternity of the child and to compel support under this article may be commenced * * * if the mother or child is or is likely to become a public charge on a county, * * * by a public welfare official of the county * * * where the mother resides or the child is found." Under the facts of this case, petitioner by its motion effectively commenced a paternity proceeding and, thus, had standing at least under Family Court Act § 522 as the child has been a public charge since birth.

In any event, CPLR 3121 (a) clearly confers standing on petitioner as a party to an abuse proceeding in which "the blood relationship of a party * * * is in controversy" (CPLR 3121 [a]). Under Family Court Act § 165 (a), where the method of procedure for any Family Court proceeding is not prescribed by the Family Court Act, the procedures are to be in accord with the CPLR to the extent that they are suitable to the proceeding involved (see, Family Ct Act § 165 [a]; *Matter of Schwartz v Schwartz*, 23 AD2d 204, 206-208). As the Family

Court Act makes no mention of DNA testing in article 10, reliance upon CPLR 3121 (a) is appropriate to confer standing on petitioner to seek an order directing the paternity tests herein.

As to the best interest argument raised by the mother, this court has delineated several factors to consider in determining whether the best interest of this child would be served by paternity testing (*see, Prowda v Wilner*, 217 AD2d 287, 290). Included among those factors are the child's interest in knowing with certainty the identity of her biological father; whether the identity of others who may be proven to be her father is known or likely to be discovered and, if so, their willingness to assume that role; the traumatic effect the testing may have on the child; and the impact, if any, that continuing uncertainty may have on the father-child relationship if testing is not ordered (*see, id.*, at 290).

Application of these factors fully supports Family Court's decision to order DNA testing. The child certainly has an interest in knowing the identity of her biological father, especially in light of the serious questions which have arisen in these abuse proceedings. The record is unclear whether there are any paternity candidates other than respondent and Billy P., who has denied fathering the child and appears unwilling to assume that role in the near future. In addition, there is no evidence that the testing will have a traumatic effect on the newborn child or that the testing would have any effect on the father-child relationship as respondent has never had contact with the child. Notably, the Law Guardian appointed to represent the child, as recommended by *Prowda v Wilner (supra)*, has advocated strongly in support of the testing (*id.*, at 290).

Additionally, the unique context in which these tests were ordered must be considered. The mother, respondent and Billy P. are respondents in these apparently still pending abuse proceedings which will determine the future care and custody of the child. Further, if respondent's paternity is excluded his mother would not have standing to pursue custody. Under these circumstances, there was a paramount need to determine whether respondent was in fact the father and, accordingly, Family Court properly granted petitioner's motion for DNA paternity testing.

Crew III, J. P., Peters, Graffeo and Mugglin, JJ., concur. Ordered that the order is affirmed, without costs.